[878 NE2d 583, 848 NYS2d 1]

NICHOLAS RAFFELLINI, Respondent, v STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

Argued October 9, 2007; decided November 15, 2007

**POINTS OF COUNSEL**

*Rivkin Radler LLP,* Uniondale (*Harris J. Zakarin* and *Evan H. Krinick* of counsel), and *Picciano & Scahill* for appellant. I. The plain and unambiguous language of Insurance Law § 3420 (f) (1) and (2) requires an insured to establish the existence of a "serious injury" before payment will be made for either uninsured motorist benefits or supplementary uninsured motorist benefits. (*Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *Leader v Maroney, Ponzini & Spencer,* 97 NY2d 95; *Matter of Charter Dev. Co., L.L.C. v City of Buffalo,* 6 NY3d 578; *Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington,* 97 NY2d 86; *Matter of Notre Dame Leasing v Rosario,* 2 NY3d 459; *People v Mobil Oil Corp.,* 48 NY2d 192; *Matter of State Farm Mut. Auto. Ins. Co. v Amato,* 72 NY2d 288; *Matter of Allstate Ins. Co. v Shaw,* 52 NY2d 818; *Cohen v Lord, Day & Lord,* 75 NY2d 95; *Criscione v City of New York,* 97 NY2d 152.) II. The legislative history, Insurance Department regulation and case law all support the interpretation of the statute that requires an insured to demonstrate a "serious injury" before payment will be made for either uninsured motorist benefits or supplementary uninsured motorist benefits. (*Matter of Federal Ins. Co. v Watnick,* 80 NY2d 539; *Rowell v Utica Mut. Ins. Co.,* 77 NY2d 636; *Matter of Country-Wide Ins. Co. v Wagoner,* 45 NY2d 581; *Matter of Allstate Ins. Co. v Shaw,* 52 NY2d 818; *Fox v Atlantic Mut. Ins. Co.,* 132 AD2d 17; *Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso,* 93 NY2d 487; *Reichel v Government Empls. Ins. Co.,* 66 NY2d 1000; *Matter of Utica Mut. Ins. Co. [Hurd],* 221 AD2d 903; *Matter of Prudential Prop. & Cas. Co. v Szeli,* 83 NY2d 681; *Walton v Lumbermens Mut. Cas. Co.,* 88 NY2d 211.)

*Michael A. Forzano,* Brooklyn, for respondent. I. By the plain

and unambiguous language of Insurance Law § 3420 (f) (2), an insured need not establish a "serious injury" as a prerequisite to obtaining benefits under his supplementary uninsured motorist coverage. II. The legislative history, intent, and purpose behind the no-fault legislation, as well as the existing case law, is in no way affected or contravened by the Appellate Division decision, and it is consistent therewith. (*Matter of Country-Wide Ins. Co. v Wagoner,* 45 NY2d 581; *Walton v Lumbermens Mut. Cas. Co.,* 88 NY2d 211; *Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso,* 93 NY2d 487; *Murray v Hartford,* 23 AD3d 629; *Brathwaite v New York Cent. Mut. Fire Ins. Co.,* 13 AD3d 405; *Matter of Allstate Ins. Co. v Torre,* 264 AD2d 477; *Matter of Gravenese v Allstate Ins. Co.,* 245 AD2d 507; *Bilodeau-Redeye v Preferred Mut. Ins. Co.,* 38 AD3d 1277; *Matter of New York Cent. Mut. Fire Ins. Co. [Guarino],* 11 AD3d 909; *Brown v Travelers Ins. Co.,* 4 AD3d 835.) III. To the extent that Insurance Department Regulation 35-D requires an insured to establish a "serious injury" as a prerequisite to coverage under the supplementary uninsured motorist provision of the policy, it runs counter to the clear wording of the statute and should not be followed. (*Hae Sup Kim v General Acc. Fire & Life Ins. Co.,* 171 AD2d 404; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451.)

*Pollack, Pollack, Isaac & DeCicco,* New York City (*Brian J. Isaac* of counsel), for New York State Trial Lawyers' Association, amicus curiae. The serious injury threshold defense may not be raised in a case seeking supplementary uninsured motorist benefits. (*Montgomery v Daniels,* 38 NY2d 41; *Walton v Lumbermens Mut. Cas. Co.,* 88 NY2d 211; *Matter of Lloyd [Motor Veh. Acc. Indem. Corp.],* 23 NY2d 478; *Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso,* 93 NY2d 487; *Reichel v Government Empls. Ins. Co.,* 66 NY2d 1000; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451.)

*Pastel & Rosen, LLP,* Albany (*Robert S. Pastel* of counsel), for New York Insurance Association, Inc., amicus curiae. Serious injury is required to recover supplementary uninsured motorist benefits. (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of O'Neill [Patriot Gen. Ins. Co.],* 202 AD2d 178; *Brown v Travelers Ins. Co.,* 4 AD3d 835; *Murphy v New York Cent. Mut. Fire Ins. Co.,* 307 AD2d 689; *Murray v Hartford,* 23 AD3d 629; *Brathwaite v New York Cent. Mut. Fire Ins. Co.,* 13 AD3d 405; *Matter of Allstate Ins. Co. v Torre,* 264 AD2d 477; *Pommells v Perez,* 4 NY3d 566.)

**OPINION OF THE COURT**

GRAFFEO, J.

The issue in this case is whether a "serious injury" exclusion in a supplementary uninsured/underinsured motorist endorsement to an automobile liability policy is enforceable. We conclude that it is.

In April 1998, plaintiff Nicholas Raffellini suffered back injuries when his vehicle was struck by a car that had driven through a red traffic light. Plaintiff's medical expenses and other basic economic loss damages were paid through no-fault insurance. He then pursued recovery for his pain and suffering from the driver of the car that caused the accident. The driver's insurance carrier agreed to pay plaintiff a settlement of $25,000—the limit of coverage under that policy. Plaintiff's own insurer, defendant State Farm Mutual Automobile Insurance Company, did not object to the settlement.

After he received the $25,000 settlement payment, plaintiff demanded that State Farm pay him $75,000 in pain and suffering damages under the supplementary uninsured/underinsured motorist (SUM) endorsement, a component of plaintiff's policy that provided up to $100,000 in coverage. When State Farm refused the demand, plaintiff commenced this breach of contract action. State Farm answered the complaint and asserted, among other defenses, that plaintiff could not recover under the SUM endorsement because he "did not sustain serious injury" and his exclusive remedy was, therefore, the receipt of no-fault benefits.

Plaintiff moved to strike the serious injury defense from State Farm's answer, claiming that Insurance Law § 3420 (f) (2), which addresses SUM benefits, does not impose serious injury as a condition precedent to recovery. State Farm countered that Insurance Law § 3420 (f) (2) must be read in tandem with Insurance Law § 3420 (f) (1), which contains a serious injury requirement for uninsured motorist benefits. The insurer further submitted that an Insurance Department regulation, Regulation 35-D, requires that SUM recovery be conditioned on a finding of serious injury.

Supreme Court granted plaintiff's motion to strike State Farm's serious injury defense on the basis that Insurance Law § 3420 (f) (2) does not reference a serious injury exclusion and Regulation 35-D is inconsistent with the statute. The Appellate Division affirmed and granted State Farm's motion for leave to

appeal to this Court, certifying the question: "Was the opinion and order of this court dated October 24, 2006, properly made?" We answer this question in the negative and reverse the order of the Appellate Division, thereby reinstating State Farm's serious injury defense.

The controversy concerning application of a serious injury requirement in these circumstances stems from the statutory framework. Insurance Law § 3420 (f) (1) mandates that insurers provide uninsured motorist coverage in every New York motor vehicle liability policy. The payment of mandatory uninsured motorist benefits is conditioned on a finding that the insured suffered a serious injury as defined in Insurance Law § 5102 (d). Section 3420 (f) (1) states: "No payment for non-economic loss shall be made under such policy provision to a covered person unless such person has incurred a serious injury, as such terms are defined in" the No-Fault Law.

Insurance Law § 3420 (f) (2) (A) addresses additional, optional personal injury coverage that can be purchased by a policyholder: "Any such policy shall, at the option of the insured, also provide supplementary uninsured/underinsured motorists insurance for bodily injury, in an amount up to the bodily injury liability insurance limits of coverage provided under such policy . . . ." Under this statute, the coverage is not triggered unless "the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements" (Insurance Law § 3420 [f] [2] [A]). Unlike subsection (f) (1), subsection (f) (2) is silent as to whether an insured must prove serious injury in order to receive supplementary benefits. Plaintiff contends that, by referencing serious injury in subsection (f) (1) and not subsection (f) (2), the Legislature permitted insurers to condition recovery of mandatory uninsured motorist benefits on the existence of a serious injury but intended to preclude them from conditioning recovery of supplementary benefits on such a finding.

Plaintiff's argument runs contrary to the interpretation of the Superintendent of Insurance expressed in Regulation 35-D, codified at 11 NYCRR subpart 60-2. Regulation 35-D was promulgated in 1992 "to interpret section 3420 (f) (2) of the Insurance Law, in light of ensuing judicial rulings and experience, by establishing a standard form for SUM coverage, in order to eliminate ambiguity, minimize confusion and maximize its utility" (11 NYCRR 60-2.0 [c]). The regulation

requires that "[e]very SUM endorsement issued shall be the Supplementary Uninsured/Underinsured Motorists Endorsement prescribed by subdivision (f) of this section" (11 NYCRR 60-2.3 [c]). Subdivision (f) sets forth the precise language insurers are to use in the endorsement, including an "EXCLUSIONS" section which reads: "This SUM coverage does not apply . . . for non-economic loss, resulting from bodily injury to an insured and arising from an accident in New York State, unless the insured has sustained serious injury as defined in Section 5102 (d) of the New York Insurance Law" (11 NYCRR 60-2.3 [f] [EXCLUSIONS] [3]). State Farm asserts that it incorporated the form language in the SUM endorsement it issued to plaintiff, as it was required to do.

It is well settled that the Legislature may authorize an administrative agency "to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 865 [2003], quoting *Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]). "In so doing, an agency can adopt regulations that go beyond the text of that legislation, provided they are not inconsistent with the statutory language or its underlying purposes" (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254 [2004]). A duly promulgated regulation that meets these criteria has the force of law.

We have previously recognized that the Legislature has vested the Superintendent of Insurance with "broad power to interpret, clarify, and implement the legislative policy" by promulgating regulations (*Medical Socy.*, 100 NY2d at 863-864, quoting *Ostrer v Schenck*, 41 NY2d 782, 785 [1977]) and has directed the Superintendent to "prescribe forms" (*see* Insurance Law § 301 [b]). Thus, in *Medical Society*, where the Superintendent's power to adopt regulations imposing strict time requirements on the filing of no-fault claims was challenged, this Court found the regulations valid, even though the No-Fault Law itself is silent on the question of time periods. We noted that the time frames, intended to combat an escalating fraud problem, were consistent with the policy underlying the No-Fault Law—to provide prompt compensation to legitimate claimants. In other contexts, we have relied on the Superintendent's interpretation of New York insurance law, expressed in Regulation 35-D, as "persuasive authority" (*see Matter of Allstate Ins. Co. [Stolarz—*

*New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219, 224 [1993]) and we have specifically cited Regulation 35-D when identifying the exclusions authorized for uninsured/underinsured motorist benefits (*see Matter of Liberty Mut. Ins. Co. [Hogan]*, 82 NY2d 57, 60 [1993]).

Plaintiff argues that, insofar as Regulation 35-D imposes a serious injury requirement on the recovery of supplementary benefits, it is inconsistent with Insurance Law § 3420 (f) (2) and is therefore unenforceable. There is no question that "if [a] regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980] [citation omitted]). But in this case, the relevant statutory provision and the regulation are not contradictory. Insurance Law § 3420 (f) (2) is silent on the issue of whether an insured can recover SUM benefits absent a serious injury and that silence does not, in this case, imply that the Legislature intended to permit such recovery.

The legislative history of the relevant provisions refutes the argument that, by placing the serious injury exclusion in the mandatory benefits provision but not the supplementary benefits provision, the Legislature intended to preclude the Superintendent from authorizing application of a serious injury exclusion for supplementary benefits. Before uninsured motorist coverage was developed almost 50 years ago, it was not uncommon for a person injured in a motor vehicle accident by an uninsured tortfeasor to be unable to recover any damages. To redress this problem, in 1958 the Legislature created the Motor Vehicle Accident Indemnification Corporation to provide compensation for individuals injured by uninsured motorists, whether or not the injured individuals possessed automobile insurance themselves (L 1958, ch 759; *see Matter of Lloyd [Motor Veh. Acc. Indem. Corp.]*, 23 NY2d 478 [1969]). At the same time, legislation was passed requiring the inclusion of mandatory uninsured motorist coverage in every automobile liability policy issued in New York (L 1958, ch 759, § 4). "The primary objective of this legislation was to afford the innocent victims of uninsured motorists the same protection available to victims of insured motorists with respect to their relative ability to obtain compensation for losses sustained in an automobile accident" (*Fox v Atlantic Mut. Ins. Co.*, 132 AD2d 17, 21 [2d Dept 1987]). The Legislature's mandatory uninsured motorist coverage provision—the pre-

decessor to Insurance Law § 3420 (f) (1)—was codified at Insurance Law § 167 (2-a).

Mandatory uninsured motorist coverage therefore significantly predated the No-Fault Law, which was not enacted until 1973 (L 1973, ch 13). The No-Fault Law changed the legal landscape by imposing a distinction between basic economic loss (primarily medical expenses and lost wages up to $50,000), which would be covered regardless of fault in an accident, and noneconomic loss (pain and suffering), recoverable only through a personal injury claim against a tortfeasor responsible for the injuries (Insurance Law § 5102 [a], [b], [c]). As to the latter, the No-Fault Law required that injured parties be precluded from pursuing personal injury claims unless they suffered a "serious injury" (Insurance Law § 5104 [a]).*

In 1977, the Legislature amended the mandatory uninsured motorist benefits statute—Insurance Law § 167 (2-a)—to clarify that the recovery available under this coverage was not to be diminished by an insurer's payment of no-fault benefits (L 1977, ch 892, § 3). At the same time, the Legislature added a new paragraph to section 167 (2-a) establishing supplementary uninsured/underinsured motorist coverage. This new paragraph—the predecessor to Insurance Law § 3420 (f) (2)—gave an insured the option of purchasing additional uninsured motorist coverage beyond the mandatory minimum as well as "underinsurance" coverage to guard against the possibility of injury by a tortfeasor who was insured but in an amount insufficient to fully compensate the injured party. The newly-added second paragraph read as a continuation of the first, providing that "[a]ny such policy shall, at the option of the insured, *also* provide supplementary uninsured motorists insurance . . . ." (L 1977, ch 892, § 3 [emphasis added].) As is the case with mandatory benefits,

---

\* " 'Serious injury' means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (Insurance Law § 5102 [d]).

the purpose of supplementary benefits was "to provide the insured with the same level of protection he or she would provide to others were the insured a tortfeasor in a bodily injury accident" (*Matter of Prudential Prop. & Cas. Co. v Szeli*, 83 NY2d 681, 687 [1994]). Rather than characterizing supplementary benefits as a distinct type of coverage, our Court has viewed underinsured motorist coverage as an extension of uninsured motorist coverage:

> "The statutory allowance for supplementary uninsured motorists insurance coverage expands the 'uninsured motorist' category to include one who, while maintaining proof of financial responsibility as required by law, and thus being an 'insured motorist', nevertheless may be considered an 'uninsured motorist' because he is 'underinsured' when compared to the coverage of an insured who has exercised the option to purchase supplementary insurance" (*Reichel v Government Empls. Ins. Co.*, 66 NY2d 1000, 1003 [1985]).

The serious injury exclusion at the heart of this dispute was added to the statutory scheme in 1981 (L 1981, ch 435) when mandatory and supplementary benefits were still addressed in adjoining paragraphs of the same subdivision—Insurance Law § 167 (2-a). The Legislature inserted the serious injury language in the first paragraph—the mandatory coverage portion—of that subdivision. But there is no indication in the legislative history of the amendment that the Legislature decided to apply a serious injury exclusion solely to mandatory coverage and not to supplementary benefits. Because both paragraphs of section 167 (2-a) related to uninsured motorist benefits and supplementary coverage was framed as an extension of the mandatory coverage outlined in the first paragraph, the exclusion can reasonably be viewed as having been intended to apply to both categories of benefits. Based on the structure of section 167 (2-a), we cannot say that the Legislature's failure to restate the serious injury provision in the second paragraph evinced an intent to preclude application of such an exclusion to supplementary benefits.

It was not until 1984, when the Insurance Law was recodified and renumbered in its entirety (L 1984, ch 367), that the two paragraphs were separated into two subsections, resulting in the placement of the serious injury exclusion in Insur-

ance Law § 3420 (f) (1) and not in Insurance Law § 3420 (f) (2). This recodification was not meant to effect a substantive change in the law—certainly, there is no reason to conclude that the Legislature split the two paragraphs into separate subsections to create a distinction between the two types of coverages that did not already exist. Given this legislative evolution, we are unpersuaded that the placement of the serious injury exclusion in Insurance Law § 3420 (f) (1) but not section 3420 (f) (2) reflects a legislative determination to restrict the serious injury exclusion to mandatory benefits.

Indeed, as the Superintendent apparently concluded, such a distinction would not be consistent with the policy underlying supplementary benefits, which are designed to give insureds the same level of protection that would have been available to others under the policy if the insureds were the tortfeasors who caused personal injuries. When an insured injures someone in a motor vehicle accident, the injured party is subject to the serious injury requirement in the No-Fault Law and cannot sue for noneconomic loss unless the serious injury threshold is met (*see* Insurance Law § 5104 [a]). Since the purpose of supplementary coverage is to extend to the insured the same level of coverage provided to an injured third party under the policy, the insured must also meet the serious injury requirement before entitlement to supplementary benefits. If this were not the case, the insured would receive coverage more comprehensive than that available to a third party injured by the insured.

It is evident from the facts of this case that the application of the serious injury exclusion is consistent with the policy supporting supplementary benefits. Here, plaintiff received payment for his basic economic loss through no-fault benefits. When he sued the negligent party who caused the collision, he was seeking recovery for noneconomic loss. Having obtained the $25,000 limit of coverage from the negligent driver's insurer, he then sought additional noneconomic loss damages under the SUM endorsement to his State Farm insurance policy. Since a third party injured as a result of plaintiff's negligence would have had to demonstrate serious injury to obtain noneconomic loss damages under plaintiff's policy, it follows that plaintiff himself must prove serious injury to recover under his SUM endorsement—as Regulation 35-D requires. State Farm is therefore entitled to pursue its serious injury defense.

Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiff's motion to strike defendant's fifth affirmative defense denied, and the certified question answered in the negative.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.