OPINION OF THE COURT
Richard M. Platkin, J.
Petitioners bring this CPLR article 78 proceeding seeking to annul Regulation 194 of the New York State Insurance Department. Regulation 194 requires licensed producers of insurance *369 to disclose to prospective purchasers the incentive compensation that they will receive from insurers or third parties based in whole or in part on the sale of insurance. Petitioners maintain that the Superintendent of Insurance (the Superintendent) lacks the statutory authority to promulgate the challenged regulations, the regulations lack an adequate factual predicate, certain aspects of Regulation 194 are arbitrary or irrational, and the new regulation runs afoul of substantive due process and equal protection principles.
Background
On January 25, 2010, the Insurance Department issued Regulation 194, entitled “Producer Compensation Transparency” (codified at 11 NYCRR part 30). The stated purposes of Regulation 194 are to: (a) implement the Insurance Law by regulating the acts and practices of insurers and producers with respect to the transparency of compensation paid to producers; and (b) protect the public by establishing minimum disclosure requirements relating to the role of producers and the incentive compensation that they receive (11 NYCRR 30.1). An “insurance producer” is defined as an insurance agent, insurance broker, reinsurance intermediary, excess lines broker, or any other person required to be licensed to sell, solicit or negotiate insurance (Insurance Law § 2101 [k]).
Pursuant to Regulation 194, an insurance producer is required to disclose the following information to potential insureds, either orally or in a “prominent writing,” prior to issuance of an insurance policy: (1) a description of the producer’s role in the sale; (2) whether the producer will receive compensation from the insurer or other third party based on the insurance contract that the producer sells; and (3) the fact that the producer’s compensation may vary depending upon a number of specified factors (11 NYCRR 30.3 [a] [l]-[3]). Purchasers must also be advised that they may request detailed information about the compensation that their producer expects to receive from the insurer selected to provide coverage, as well as the incentive compensation associated with any alternative quotes presented by the producer (id. 11 [4]).
Upon such a request, the producer shall disclose the following information in a prominent writing at or prior to issuance of the insurance contract:
“(1) a description of the nature, amount and source of any compensation to be received by the producer . . . based in whole or in part on the sale;
*370 “(2) a description of any alternative quotes presented by the producer, including the coverage, premium and any compensation that the insurance producer . . . would have received based in whole or in part on the sale of any such alternative coverage;
“(3) a description of any material ownership interest the insurance producer . . . has in the insurer issuing the insurance contract . . . ;
“(4) a description of any material ownership interest the insurer issuing the insurance contract . . . has in the insurance producer . . . ; and
“(5) a statement whether the insurance producer is prohibited by law from altering the amount of compensation received from the insurer based in whole or in part on the sale.” (11 NYCRR 30.3 [b].)[1]
The foregoing requirements do not apply to the placement of reinsurance, the placement of insurance with a captive insurer, or to producers who have no direct sales or solicitation contact with the purchaser, including wholesale brokers and managing general agents (11 NYCRR 30.5 [a]-[c]). Further, the regulation does not apply to policy renewals, except where the purchaser makes a timely request for detailed disclosure (id. subd [e]).
The term “compensation” is broadly defined in Regulation 194 to mean “anything of value, including money, credits, loans, interest on premium, forgiveness of principal or interest, trips, prizes, or gifts, whether paid as commission or otherwise” (11 NYCRR 30.2 [a]). However, “compensation” does not include promotional items having an aggregate value of less than $100 per year per insurer (id.).
In connection with the promulgation of Regulation 194, the Insurance Department issued a Regulatory Impact Statement (Statement) (available at http://www.ins.state.ny.us/r_finala/ 2010/rfl94ris.htm, cached at http://www.nycourts.gov/reporter/ webdocs/Regulatory_Impact_Statement.htm), setting forth, among other things, the administrative agency’s justification for the new regulation and its expected benefits. The Insurance Department explained that producers often receive incentive compensation from insurance carriers for their role in placing and selling insurance. This compensation is in addition to commissions earned on policy premiums. While recognizing that
“[tjhere is nothing inherently improper about an *371 incentive-based, compensation arrangement between an insurer and the producer, ... a potential conflict of interest may arise when an insurance policy that would earn the producer the greatest compensation for its sale is not the most appropriate insurance for the customer in terms of coverage, service or price. This may create an incentive for the producer to recommend that policy to the customer.” (Id.)
The Statement goes on to refer to a joint investigation conducted by the Insurance Department and the Office of the Attorney General in 2004 that uncovered instances of criminal bid rigging by a large insurance broker and several large insurers, as well as “steering” schemes involving major insurers and producers in which undisclosed incentive compensation played a role. However, in the Superintendent’s view, the issue goes well beyond the large brokers and insurers that were of the subject of the 2004 investigation. In promulgating Regulation 194, the Superintendent embraced the position advanced by certain consumer representatives — that many consumers are not aware of the role that producers play in insurance transactions and the effect that incentive compensation may have on a producer’s recommendations:
“The proposed regulation is intended to provide a means to address the potential conflict that arises due to the differences in the amount of compensation an insurer pays to its producers in the least invasive manner possible — by requiring that insurance producers make certain disclosures about their role in the insurance transaction and compensation arrangements with insurers to insurance customers. Specifically, the regulation would require an insurance producer to disclose whom the producer represents in the transaction, that the producer will receive compensation from the insurer based upon the sale of the policy, that the compensation paid by insurers may vary, and that the purchaser may obtain from the producer, upon request, information about the compensation the producer expects to receive from the sale of the policy. The regulation also requires that upon the customer’s request, the producer disclose the amount of compensation for the policy selected and any alternative quotes presented. The required disclosures would minimize the potential conflicts that arise from producer compensation because [they] allow[ ] insurance *372 customers to request information about the compensation for the insurance policy and alternative policies quoted.
“Empowering customers with this information makes it more difficult for an insurance producer to succumb to an incentive to place the policy with the insurer paying the greatest compensation, or one type of policy with an insurer over another with the same insurer, rather than offering the best policy in terms of price, coverage or service. Overall, all insurance consumers in the state, whether personal or commercial, are likely to benefit from the regulation because transparency and a better understanding of the role of insurance producer is likely to lead to better-informed selection among available insurance options.” (Regulatory Impact Statement 11 [3].)
Three of the petitioners challenging Regulation 194 are licensed producers who will be subject to Regulation 194 when it enters into force and effect: IAAC, Inc., Sullivan Financial Group, Inc. and Aurora, Inc. The other two petitioners are not-for-profit professional associations charged with representing the interests of producers: the Council of Insurance Brokers of Greater New York, Inc., which represents licensed insurance brokers who serve the City of New York and surrounding counties, and the Independent Insurance Agents & Brokers of New York, Inc., which represents the interests of licensed independent insurance agents and brokers through the state.
Petitioners principally argue that the Superintendent lacks the statutory authority to promulgate Regulation 194. They also claim that the administrative record lacks an adequate factual predicate for the promulgation of Regulation 194 and that insurance producers will be irrationally and unreasonably burdened by the new regulation. With regard to the latter contention, petitioners complain that Regulation 194 imposes costly and unnecessary burdens, particularly on small and medium-sized producers. Moreover, petitioners assert that full compliance with the regulations may be virtually impossible due to circumstances beyond their control. In addition, petitioners challenge the regulatory exemption for wholesale brokers and managing general agents.
Oral argument was held on October 15, 2010. This decision, order and judgment follows.
*373 Analysis
A. Authority to Promulgate the Challenged Regulation
Petitioners first contend that the Superintendent exceeded the scope of his constitutional authority and engaged in inherently legislative activity in promulgating Regulation 194.
The authority of the Superintendent to promulgate regulations is set forth in Insurance Law § 301. “The superintendent shall have the power to prescribe . . . regulations, not inconsistent with the provisions of this chapter: ...(b) effectuating any power, given to him under the provisions of this chapter to prescribe forms or otherwise make regulations; [or] (c) interpreting the provisions of this chapter” (id.).
It is by now well established that this enabling legislation “does not cede to the executive branch fundamental legislative or policymaking authority, which remains at all times with the Legislature” (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 864-865 [2003]). “Since the Legislature’s initial grant of authority to the administrative agency [is] constitutional, the next question is whether the Superintendent exceeded the scope of his constitutional authority by engaging in inherently legislative activity by promulgating the challenged regulations” (id. at 865).
“ ‘The cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation’ ” (id. at 865, quoting Matter of Nicholas v Kahn, 47 NY2d 24, 31 [1979]). The Legislature has vested the Superintendent of Insurance with “broad power to interpret, clarify, and implement the legislative policy” by promulgating regulations (Medical Socy., 100 NY2d at 863-864, quoting Ostrer v Schenck, 41 NY2d 782, 785 [1977]; see also Insurance Law § 201).
Thus, the Superintendent “ ‘can adopt regulations that go beyond the text of [the Insurance Law], provided they are not inconsistent with the statutory language or its underlying purposes’ ” (Matter of Allstate Ins. Co. v Rivera, 12 NY3d 602, 608 [2009], quoting Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 254 [2004]). “A duly promulgated regulation that meets these criteria has the force of law” (Raffellini v State Farm Mut. *374 Auto. Ins. Co., 9 NY3d 196, 201 [2007]). “However, if [a] regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight” (Allstate, 12 NY3d at 608 [internal quotation marks omitted]).
In contending that the Superintendent “has, in effect, extended and rewritten the Insurance Law in a manner that is flatly inconsistent with its terms,” petitioners direct the court’s attention to Insurance Law § 2119. That statute provides that an insurance agent, broker or consultant may not “receive any fee, commission or thing of value for examining, appraising, reviewing or evaluating any insurance policy . . . unless such compensation is based upon a written memorandum signed by the party to be charged and specifying or clearly defining the amount or extent of such compensation” {id. subd [a] [1]). Further,
“[n]o insurance broker may receive any compensation, other than commissions deductible from premiums on insurance policies or contracts, from any insured or prospective insured . . . unless such compensation is based upon a written memorandum, signed by the party to be charged, and specifying or clearly defining the amount or extent of such compensation” {id. subd [c] [1]).
In maintaining that Regulation 194 improperly extends and contravenes Insurance Law § 2119 (a) and (c), petitioners observe that the cited statute does not require insurance producers to disclose the incentive compensation that they receive from insurers or other third parties. Rather, the only disclosure called for in Insurance Law § 2119 arises out of the requirement that any compensation received by a producer from an insured be based upon a signed writing “specifying or clearly defining the amount or extent of such compensation” {id. subd [a] [1]).
The Court of Appeals has explained that Insurance Law § 2119 represents a specialized, “more exacting” statute of frauds designed to protect purchasers of insurance (see Henry L. Fox Co. v Kaufman Org., 74 NY2d 136, 141 [1989]). “The statute does not prohibit a broker from receiving additional compensation for his services . . . All it requires is that payment for those services be evidenced by a writing signed by the insured and specifying the amount or extent of the compensation paid for those services” (Matter of Country-Wide Brokerage v Harnett, 58 AD2d 517, 518 [1st Dept 1977]).
*375 It is apparent from the foregoing that Regulation 194 is not inconsistent with the text, structure or purpose of Insurance Law § 2119. In preventing a producer from charging an insured more than the agreed-upon premium in the absence of a contrary writing, Insurance Law § 2119 serves to protect against a particular type of fraud: efforts by an unscrupulous insurance producer to collect unauthorized, additional compensation from an insured (see Henry L. Fox Co., 74 NY2d at 141; Gibbons v DeWitt Stern Group, 289 AD2d 196, 197 [2d Dept 2001] [statute “protects insureds from unscrupulous insurance brokers who could otherwise charge additional fees without the insured’s knowledge”]).
Regulation 194 is directed at an entirely different problem: the potential conflict of interest that arises when a producer is offered financial incentives to place an insurance policy with the insurer paying the greatest compensation to the producer, rather than the insurer providing the best coverage, pricing or service to the insured. Further, while Insurance Law § 2119 speaks to the disclosure of compensation to be received from the insured, the focus of Regulation 194 is on the producer and its receipt of incentive compensation from the insurer or other third party. Thus, whereas Insurance Law § 2119 regulates the financial relationship between a producer and an insured, Regulation 194 is directed at providing insureds with disclosure of the financial relationship between the producer and the insurer.
Accordingly, the court concludes that petitioners have failed to establish that Regulation 194 is inconsistent with the text, structure or purpose of Insurance Law § 2119. In adopting Insurance Law § 2119, the Legislature did not speak to the disclosure of the financial arrangements between producers and insurers. Further, petitioners have not demonstrated that the Legislature’s failure to enact a statute requiring the disclosure of incentive compensation evinces a clear intention to preclude the Superintendent from exercising his broad regulatory powers (see Raffellini, 9 NY3d at 202).
Nor does the court see any inconsistency between Regulation 194 and the provisions of article 21 of the Insurance Law, which provide for the licensure and regulation of producers. Article 21 gives the Superintendent broad authority to, among other things, regulate the standards of competency, trustworthiness and responsibility of producers (see Insurance Law § 2110 [a] [4], [6]). In promulgating Regulation 194, the Superintendent has determined — on the basis of his “knowledge and *376 understanding of underlying operational practices [of the insurance industry and his] . . . evaluation of factual data and inferences to be drawn therefrom” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]) — that Regulation 194 represents the least restrictive means of ameliorating the adverse effects of undisclosed incentive compensation. The court is satisfied that there is a sufficient nexus between the Superintendent’s regulatory efforts to prevent licensees from operating under undisclosed conflicts of interest and his statutory responsibility to protect the public from untrustworthy licensees.
In this connection, the court rejects petitioner’s reliance on Matter of Campagna v Shaffer (73 NY2d 237 [1989]), in which the Court of Appeals struck down a regulation that prohibited licensed real estate brokers from soliciting customers in specified geographic areas. In so doing, the Court of Appeals determined that the Department of State’s wholesale ban on all broker-initiated solicitations was inconsistent with the narrower remedy for “block-busting” adopted by the State Legislature: a prohibition on specified types of solicitations (id. at 240-241). Accordingly, the Court of Appeals concluded that the administrative agency could not adopt a definition of broker untrustworthiness at odds with the definition of unlawful discrimination previously enacted by the Legislature {id. at 244).
Here, petitioners can point to no similar conflict between a legislative enactment and the challenged regulation. The Legislature has not spoken to the disclosure of incentive compensation paid by an insurer to a producer or otherwise prescribed the circumstances under which the receipt or disclosure of such compensation is appropriate. Instead, the Legislature has fixed a primary standard — that licensed producers must be trustworthy — and charged the Superintendent with the task of “ ‘fill[ing] in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation’ ” (100 NY2d at 865, quoting Matter of Nicholas v Kahn, 47 NY2d at 31). Moreover, unlike Campagna, the Superintendent has not sought to curtail the legitimate activities of producers in receiving incentive compensation, but has instead adopted regulations directed only at providing transparency and disclosure.
Finally, the court rejects petitioners’ contention that the Superintendent’s authority under article 21 is limited to disciplining licensees found to have engaged in untrustworthy *377 behavior or to imposing disclosure requirements only upon such licensees. Petitioners have failed to provide the court with a persuasive basis for concluding that while the Superintendent has the authority to pursue a path of individualized disciplinary adjudications against producers with respect to conflicts of interest arising from undisclosed incentive compensation, his broad regulatory and disciplinary powers do not extend to the adoption of a disclosure-upon-request rule intended to avoid or minimize potentially actionable conflicts of interest.
For all these reasons, the court concludes that petitioners have failed to demonstrate that the Superintendent lacked the authority to promulgate Regulation 194.
B. Lack of Factual Predicate
Next, petitioners contend that the Superintendent lacked an “adequate predicate” for the adoption of Regulation 194.
“[A]n administrative regulation will be upheld only if it has a rational basis, and is not unreasonable, arbitrary or capricious. Administrative rules are not judicially reviewed pro forma in a vacuum, but are scrutinized for genuine reasonableness and rationality in the specific context. The challenger must establish that a regulation is so lacking in reason for its promulgation that it is essentially arbitrary” (New York State Assn. of Counties v Axelrod, 78 NY2d 158, 166 [1991] [internal quotation marks and citations omitted]).
Petitioners claim that the Superintendent “began with a conclusion regarding unethical practices by producers and then unilaterally adopted a solution to a problem that simply is not found in the facts.” More specifically, petitioners argue that while the purpose of Regulation 194 is to prevent producers from succumbing to financial incentives in placing insurance, the administrative record fails to establish: (a) the number of producers found to have “succumb[ed]” to such incentives; (b) surveys or other assessments setting forth the percentage of purchasers who claim that they would have been able to make a better informed selection with the benefit of Regulation 194; (c) the percentage of purchasers who believe that they were placed in insurance on the basis of producer incentives rather than the merits of the recommended policy; and (d) the extent to which similar disclosure requirements in other jurisdictions have prevented producers from succumbing to financial incentives in making placement decisions.
*378 The court does not find these arguments persuasive. The record establishes that as early as 1998, the Insurance Department issued a circular letter warning brokers and insurers of the agency’s concerns regarding allegations of “undisclosed compensation, in addition to commissions, . . . being paid to brokers by insurers as additional compensation for the placing of business without such information being furnished to insureds” (Insurance Department Circular Letter No. 22 [Aug. 25, 1998], available at http://www.ins.state.ny.us/circltr/1998/ cll998_22.pdf). At that time, the Superintendent advised producers and insurers of his position that “the undisclosed receipt of additional compensation is sufficient to create the perception that brokers are conflicted in their loyalties and that such conduct may constitute a violation of Section 2110 as a dishonest or untrustworthy practice” (id.). Following the joint Attorney General/Insurance Department investigation in 2004, certain insurers and producers entered into settlement agreements and regulatory stipulations with respect to allegations of improper “steering” — conduct that appears to have been motivated, at least in part, by the producers’ receipt of undisclosed incentive compensation from insurers or third parties.
As a result, the Superintendent began the process of developing regulations regarding the disclosure of producer incentive compensation. Public hearings were held in July 2008, and outreach by the Insurance Department to trade organizations, consumer groups and other stakeholders continued for more than one year. Draft regulations then were published, public comments received, and numerous formal and informal meetings were held with stakeholders and other interested parties. Following this process, the Superintendent determined, in the exercise of his broad regulatory powers, that Regulation 194 and its prophylactic standard of detailed disclosure at the request of an insured represented the least restrictive means of minimizing the potential conflicts of interest that arise from producers’ receipt of undisclosed incentive compensation from insurers.
Contrary to petitioners’ contention, nothing in law required the Superintendent to quantify the exact number of individuals who have been harmed by undisclosed incentive compensation or to conduct an empirical survey identifying the precise benefits that would be obtained under Regulation 194 prior to taking action. Rather, the burden in this proceeding rests squarely upon petitioners to demonstrate that Regulation *379 194 is utterly lacking in reason and rationality. Based on the administrative record compiled by the Insurance Department, the court concludes that petitioners have failed to demonstrate that the Superintendent’s decision to require producers to disclose incentive compensation at the request of insureds is so lacking in reason that the promulgation of Regulation 194 is essentially arbitrary.
Moreover, while petitioners take issue with the breadth of the disclosure requirements — lamenting that producers must disclose incentive compensation regardless of the insured’s reason for the request, the amount of insurance involved, the amount of premiums at issue, the amount of compensation at issue, or the producer’s history of complaints — they have failed to demonstrate that the Superintendent acted arbitrarily or irrationally in making disclosure available to all purchasers of insurance upon request. As stated above, the Superintendent has determined, based on his knowledge and understanding of the insurance industry and his evaluation of the factual data and inferences to be drawn therefrom, that the expected benefits flowing to purchasers of insurance from Regulation 194 outweigh the attendant burdens on producers. While the court recognizes and appreciates the public policy arguments in favor of a more narrowly tailored, less burdensome rule or the adoption of an incremental approach to the issue, the availability of such alternatives does not render the challenged regulation unreasonable or irrational.[2]
C. Lack of Rationality
Petitioners further argue that Regulation 194 unreasonably and irrationally imposes burdens on producers that were not intended by the Legislature. In this regard, petitioners point to the staffing costs associated with responding to requests by insureds for detailed compensation disclosures. Petitioners also claim that they will be subject to increased liability, including litigation and/or the possible suspension or revocation of their licenses, as a result of the broad definition of “compensation” established in Regulation 194 and the practical and administrative difficulties associated with obtaining and quantifying the details of their incentive compensation. Petitioners further complain that these compliance costs and the other burdens at *380 tendant to Regulation 194 will discourage producers from remaining in business in New York State and from providing alternative quotes, thereby reducing consumer choice and competition.
While the Superintendent claims that the costs of complying with Regulation 194 are “minimal” (Gaul aff 1i 21), the factual record does not bear out this conclusory assertion. Rather, it is apparent that Regulation 194 has the potential to impose real and significant burdens on producers by requiring them to disclose all compensation to be received from insurers and other third parties from the sale of insurance. That said, the actual level of burden is highly dependent on the number of purchasers who opt to request a detailed disclosure, and neither side has given the court a nonspeculative basis upon which to assess the proportion of purchasers who will make such requests. Under the circumstances, petitioners have failed to demonstrate that the regulatory burden will be so severe as to render Regulation 194 arbitrary or irrational.
Further, while petitioners raise legitimate questions and concerns regarding the broad definition of “compensation” used in Regulation 194 and the difficulties that may arise in attempting to ascertain the incentive compensation associated with a particular transaction — particularly where the level of incentive compensation is dependent upon multiple transactions — the Superintendent did attempt to address these issues by including language in Regulation 194 recognizing that the “nature, amount or value” of incentive compensation may not be known at the time of the transaction and authorizing producers to provide “a reasonable estimate” of incentive compensation, “which may be stated as a range of amounts or values” (11 NYCRR 30.3 [d] [2]). The court cannot say that petitioners’ lingering doubts about their ability to provide “reasonable estimate[s]” of incentive compensation provide a sufficient basis to invalidate Regulation 194.
In reaching the foregoing conclusions, the court is mindful of its obligation to give substantial deference to the policy judgments of the Superintendent, who is charged with regulating the insurance industry in New York State and who has been given broad powers to effectuate that legislative mandate. And by granting such powers to the Superintendent, the Legislature has acknowledged, at least implicitly, that licensees may be subject to the increased burdens and expenses attendant to additional regulation. Here, the Superintendent has determined *381 that the benefits associated with the disclosure of producer incentive compensation, even from small producers, outweigh the associated regulatory costs and burdens. It is not the role of the Judiciary to substitute its judgment for that of responsible executive branch officials. And even if time and experience ultimately were to demonstrate that a more narrowly tailored approach would better serve the Superintendent’s objective of ensuring choice and competition in the insurance market, it cannot be said that the Superintendent acted irrationally in adopting the across-the-board disclosure requirements of Regulation 194.
Relatedly, petitioners argue that Regulation 194 cannot be implemented practicably in accordance with other pertinent provisions of law. More specifically, petitioners argue that disclosures made pursuant to Regulation 194 inevitably will invite customers to demand reduced insurance rates based upon the incentive compensation to be earned by the producers — a practice that allegedly runs afoul of Insurance Law §§ 2324 and 4224, which prohibit, among other things, the rebating or sharing of commissions. Further, petitioners assert that the requirement that producers disclose information regarding alternative quotes is inconsistent with casé authorities holding that producers “have no continuing duty to advise, guide or direct a client to obtain additional [insurance]” (petitioners’ mem of law at 32, quoting Murphy v Kuhn, 90 NY2d 266, 270 [1997]).
These arguments are unavailing. Even if the disclosure requirements of Regulation 194 lead consumers to demand the rebating or sharing of commissions, the provisions of the Insurance Law relied upon by petitioners would compel all licensed producers to uniformly refuse such demands. Further, as noted by the Superintendent, nothing in Regulation 194 prevents producers from educating consumers regarding the efforts of producers and the relative importance of factors other than producer compensation in selecting the most appropriate insurance policy. And even if the refusal of producers to rebate a portion of their incentive compensation were to give rise to some level of dissatisfaction by insureds, it cannot be said that the cited statutes and Regulation 194 are irreconcilable.
Nor does the court see any inconsistency between the limited duties owed by a producer to an insured at common law and Regulation 194’s requirement that a producer provide “a description of any alternative quotes presented by the producer” and disclose the incentive “compensation that . . . would *382 have [been earned] based on any such alternative” quotes. (11 NYCRR 30.3 [b] [2].) In fact, the need for Regulation 194 arises precisely because producers do not owe a legal duty to an insured to recommend the best or most appropriate coverage. In any event, Regulation 194 does not require a producer to provide alternative quotes; it merely requires that when a producer chooses to provide alternative quotes, it must disclose the incentive compensation associated with each of the alternatives presented upon request. Further, there is no reason to believe that the description of “coverage” called for under Regulation 194 represents anything more than a mechanism for consumers to compare the salient points of the alternative policies presented by their producer.
Conclusion
The court concludes that petitioners have failed to meet their burden of demonstrating that Regulation 194 is invalid. The court has considered petitioners’ remaining arguments, including their equal protection claim, and finds them unavailing.[3] ****8
Accordingly, it is ordered, adjudged and decreed that the petition is denied in all respects.

. If time is of the essence to issuance of the insurance contract, the necessary disclosures may be provided within five days.

. [4] Given the court’s finding that Regulation 194 is rationally based, petitioners’ substantive due process claim is without merit (see Kaluczky v City of White Plains, 57 F3d 202, 211 [2d Cir 1995]).

. Petitioners’ equal protection argument is grounded upon the exemption granted to producers who have no direct sales contact with purchasers, including certain wholesale brokers and managing general agents. Even if there remains a potential for abuse by such exempt entities, petitioners have failed to demonstrate that the Superintendent acted irrationally in limiting Regulation 194 to those producers who deal directly with purchasers.