In an action to recover damages pursuant to the supplementary uninsured/underinsured motorist endorsement of an insurance policy, the defendant appeals from an order of the Supreme Court, Kings County (Bunyan, J.), dated March 10, 2011, which granted those branches of the plaintiffs’ motion which were, in effect, for summary judgment determining that the amount of *1108 supplementary uninsured/underinsured motorist coverage available to the plaintiffs pursuant to the subject insurance policy is $400,000 and to dismiss the third and fourth affirmative defenses pursuant to CPLR 3211, and denied its cross motion, in effect, for summary judgment determining that the amount of supplementary uninsured/underinsured motorist coverage available to the plaintiffs pursuant to the subject insurance policy is limited to $145,000.
Ordered that the order is reversed, on the law, with costs, those branches of the plaintiffs’ motion which were, in effect, for summary judgment determining that the amount of supplementary uninsured/underinsured motorist coverage available to the plaintiffs pursuant to the subject insurance policy is $400,000 and to dismiss the third and fourth affirmative defenses pursuant to CPLR 3211 are denied, and the defendant’s cross motion, in effect, for summary judgment determining that the amount of supplementary uninsured/underinsured motorist coverage available to the plaintiffs pursuant to the subject insurance policy is limited to $145,000 is granted.
On March 4, 2003, Rifka and Anton Goldenberg were killed when a vehicle operated by a drunk driver, Michael McGibbon, collided with their vehicle. The insurance policy covering McGibbon’s vehicle contained coverage limits of $50,000 per person and $100,000 per accident. The Goldenbergs’ automobile insurance policy (hereinafter the subject policy), issued by the defendant, Tri-State Consumer Insurance Company (hereinafter Tri-State), included a supplementary uninsured/underinsured motorist (hereinafter SUM) endorsement which contained a coverage limit of $250,000 per person and $500,000 per accident. The plaintiffs in this action, the Goldenbergs’ daughters, who are the administrators of their estates, commenced an action to recover damages from, among others, McGibbon’s estate, the owner of McGibbon’s vehicle, and a bar and a diner that had served McGibbon alcohol before the accident. The insurer of McGibbon’s vehicle agreed to pay the $100,000 maximum coverage limit of its policy in settlement of the claims against McGibbon’s estate and the owner of his vehicle. The bar and the diner (hereinafter together the Dram Shop defendants), and their insurers, agreed to pay a total of $255,000 in settlement of the “Dram Shop” claims asserted against them (hereinafter the Dram Shop recovery). Thus, the plaintiffs settled the prior action for a total of $355,000.
The plaintiffs submitted a claim to Tri-State for recovery under the SUM endorsement of the subject policy. Tri-State asserted that the amount available to the plaintiffs under the *1109 SUM endorsement was limited to $145,000 (the $500,000 coverage amount less the total amount of the $355,000 settlement in the prior action). Thereafter, the plaintiffs commenced this action against Tri-State seeking to recover damages pursuant to the SUM endorsement in the amount of $400,000. In the complaint, they alleged that the SUM endorsement’s $500,000 coverage limit could properly be reduced only by the $100,000 attributable to McGibbon’s policy, and not by the amount of the Dram Shop recovery. In its answer, the defendant alleged, under the third and fourth affirmative defenses, that the amount of SUM coverage available to the plaintiffs is reduced by the amount of the Dram Shop recovery. The plaintiffs moved, inter alia, in effect, for summary judgment determining that the amount of SUM coverage available to them pursuant to the subject policy is $400,000 and to dismiss the third and fourth affirmative defenses pursuant to CPLR 3211, and Tri-State cross-moved, in effect, for summary judgment determining that the amount of such coverage is limited to $145,000. The Supreme Court granted the aforementioned branches of the plaintiffs’ motion and denied Tri-State’s cross motion. Tri-State appeals, and we reverse.
The subject policy contained the standard SUM endorsement prescribed by the Superintendent of Insurance in Regulation No. 35-D (11 NYCRR 60-2.3 [c], [f]). Two conditions in the endorsement are directly at issue in this appeal. Condition 6 provides:
“6. Maximum SUM Payments. Regardless of the number of insureds, our maximum payment under this SUM endorsement shall be the difference between:
“(a) The SUM limits; and
“(b) The motor vehicle bodily injury liability insurance or bond payments received by the insured or the insured’s legal representative, from or on behalf of all persons that may be legally liable for the bodily injury sustained by the insured.
“The SUM limit shown on the Declarations for ‘Each Person’ is the amount of coverage for all damages due to bodily injury to one person. The SUM limit shown under ‘Each Accident’ is, subject to the limit for each person, the total amount of coverage for all damages due to bodily injury to two or more persons in the same accident.”
Condition 11 provides:
“11. Non-Duplication. This SUM coverage shall not duplicate any of the following:
*1110 “(a) Benefits payable under workers’ compensation or other similar laws;
“(b) Non-occupational disability benefits under article nine of the Workers’ Compensation Law or other similar law;
“(c) Any amounts recovered or recoverable pursuant to article fifty-one of the New York Insurance Law or any similar motor vehicle insurance payable without regard to fault;
“(d) Any valid or collectible motor vehicle medical payments insurance; or
“(e) Any amounts recovered as bodily injury damages from sources other than motor vehicle bodily injury liability insurance policies or bonds.”
SUM coverage in New York is a converse application of the golden rule; its purpose is “to provide the insured with the same level of protection he or she would provide to others were the insured a tortfeasor in a bodily injury accident” (Matter of Prudential Prop. & Cas. Co. v Szeli, 83 NY2d 681, 687 [1994]; see Matter of Allstate Ins. Co. v Rivera, 12 NY3d 602, 608 [2009]; Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d 196, 204 [2007]; see generally Norman H. Dachs and Jonathan A. Dachs, SUM Insurance Dilemma Hits the Mainstream, NYLJ, Sept. 19, 2012 at 3, col 1). With this limited purpose, SUM coverage does not function as a stand-alone policy to fully compensate the insureds for their injuries (cf. Bauter v Hanover Ins. Co., 247 NJ Super 94, 96-97, 588 A2d 870, 872 [1991], cert denied 126 NJ 335, 598 A2d 893 [1991]). The conditions quoted above make this clear, as do other conditions not directly at issue in this case.
Here, the maximum SUM coverage of the subject policy was $500,000 per accident. The amount payable under that coverage was reduced, under Conditions 6 (a) and (b), by the $100,000 paid by McGibbon’s insurer, inasmuch as that amount constituted a “motor vehicle bodily injury liability insurance . . . payment ]” that the plaintiffs received (11 NYCRR 60-2.3 [f]). Further, the Dram Shop claims were settled for a total of $255,000. The Dram Shop recovery constitutes, under Condition 11 (e), an amount “recovered as bodily injury damages from sources other than motor vehicle bodily injury liability insurance policies or bonds.” Condition 11 does not allow duplicate recovery of such damages. Consequently, under the terms of the SUM endorsement, the plaintiffs’ receipt of the Dram Shop recovery reduces, by that same $255,000, the amount payable under the SUM *1111 endorsement. The plaintiffs are not penalized by this reduction, since they received the maximum amount for which they are covered under the SUM endorsement: $100,000 from McGibbon’s policy, $255,000 from or on behalf of the Dram Shop defendants, and $145,000 from Tri-State.
We reject the plaintiffs’ argument that 11 NYCRR subpart 60-2, which includes the nonduplication provision, is inconsistent with Insurance Law § 3420 (f) (2) (A). When the Legislature enacted the no-fault structure in 1977, its concern about duplicate payments was reflected in the law itself (see L 1977, ch 892, § 7; see also Mem of State Executive Department, 1977 McKinney’s Session Laws at 2448). The adoption by the Superintendent of Insurance of additional provisions regarding duplication furthers the Legislature’s goal, and is not inconsistent with it (cf. Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d at 201-202).
Finally, as the plaintiffs point out, a claimant has the right to submit a SUM claim upon exhaustion of the full liability limits of just one tortfeasor (see e.g. S’Dao v National Grange Mut. Ins. Co., 87 NY2d 853 [1995]). However, that does not mean that a claimant’s ultimate entitlement to payment under the SUM endorsement may not be reduced or eliminated, depending on amounts recovered from additional tortfeasors (see Matter of Central Mut. Ins. Co. [Bemiss], 12 NY3d 648, 657-659 [2009]; Matter of Liberty Mut. Ins. Co. v Walker, 84 AD3d 960, 961 [2011]).
Accordingly, the Supreme Court should have denied those branches of the plaintiffs’ motion which were, in effect, for summary judgment determining that the amount of SUM coverage available to them pursuant to the subject insurance policy is $400,000 and to dismiss the third and fourth affirmative defenses pursuant to CPLR 3211, and should have granted the defendant’s cross motion, in effect, for summary judgment determining that the amount of such coverage is limited to $145,000. Florio, J.E, Balkin, Hall and Miller, JJ., concur.