[911 NE2d 817, 883 NYS2d 755]

In the Matter of ALLSTATE INSURANCE COMPANY, Respondent, v NYDIA RIVERA et al., Appellants.

In the Matter of CLARENDON NATIONAL INSURANCE COMPANY, Respondent, v FRANCISCO NUNEZ, SR., et al., Appellants.

Argued April 30, 2009; decided June 4, 2009

## POINTS OF COUNSEL

*Shayne, Dachs, Corker, Sauer & Dachs,* Mineola *(Jonathan A. Dachs* of counsel), and *Tinari, O'Connell, Osborn & Kaufman, LLP,* Central Islip, for appellants in the first above-entitled proceeding. The order of the Appellate Division should be reversed because it was and is egregiously erroneous and in direct contravention of well-settled law, alters well-established principles of insurance law and practice, appears to invalidate certain regulatory and policy provisions, directly conflicts with prior decisional law, including decisions of this Court, and unnecessarily and improperly injects uncertainty and indefiniteness into a previously settled and well-understood area of the law. *(Matter of National Assn. of Ind. Insurers v Curiale,* 190 AD2d 597, 81 NY2d 711; *Matter of Vanguard Ins. Co. [Polchlopek],* 18 NY2d 376; *Matter of Nationwide Mut. Ins. Co. v*

*Riccadulli,* 183 AD2d 111; *Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso,* 93 NY2d 487; *Raffellini v State Farm Mut. Auto. Ins. Co.,* 9 NY3d 196; *Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Matter of Nicholas v Kahn,* 47 NY2d 24; *Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.,* 2 NY3d 249; *Ostrer v Schenck,* 41 NY2d 782; *State Farm Mut. Auto. Ins. Co. v Mallela,* 4 NY3d 313.)

*Sweetbaum & Sweetbaum,* Lake Success (*Marshall D. Sweetbaum* of counsel), and *Law Office of Robert P. Tusa,* Hauppauge, for respondent in the first above-entitled proceeding. I. The order of the Appellate Division is appropriate, sound, logical and correct in all respects and should therefore be affirmed. (*Oden v Chemung County Indus. Dev. Agency,* 87 NY2d 81; *Goncalves v Regent Intl. Hotels,* 58 NY2d 206; *Bingham v Ryder Truck Rental,* 110 AD2d 867; *Lichtman v Nadler,* 74 AD2d 66; *Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Boreali v Axelrod,* 71 NY2d 1; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Telaro v Telaro,* 25 NY2d 433.) II. The offset issue decided by the Appellate Division was correct in all respects. (*Matter of National Assn. of Ind. Insurers v Curiale,* 190 AD2d 597, 81 NY2d 711; *Matter of Valente v Prudential Prop. & Cas. Ins. Co.,* 77 NY2d 894; *Moshiko, Inc. v Seiger & Smith,* 137 AD2d 170, 72 NY2d 945; *Matter of Graphic Arts Mut. Ins. Co. [Dunham],* 303 AD2d 1038; *Butler v New York Cent. Mut. Fire Ins. Co.,* 274 AD2d 924.)

*Pollack, Pollack, Isaac & De Cicco,* New York City (*Brian J. Isaac* of counsel), for New York State Trial Lawyers Association, amicus curiae in the first above-entitled proceeding. The Appellate Division decision improperly analyzes the pertinent regulations and case law and should be reversed. (*Matter of Vanguard Ins. Co. [Polchlopek],* 18 NY2d 376; *Breed v Insurance Co. of N. Am.,* 46 NY2d 351; *Liverpool & London & Globe Ins. Co. v Kearney,* 180 US 132; *Matthews v American Cent. Ins. Co.,* 154 NY 449; *Matter of Government Empls. Ins. Co. v Young,* 39 AD3d 751; *Matter of New York Cent. Mut. Fire Ins. Co. v White,* 262 AD2d 415; *Matter of Clarendon Natl. Ins. Co. v Nunez,* 48 AD3d 460.)

*Rivkin Radler LLP,* Uniondale (*Evan H. Krinick* and *Harris J. Zakarin* of counsel), for New York Insurance Association, amicus curiae in the first above-entitled proceeding. Adopting the position of respondents-appellants would give the insured

greater coverage than that available to a third party injured by the insured. (*Raffellini v State Farm Mut. Auto. Ins. Co.,* 9 NY3d 196; *Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso,* 93 NY2d 487; *Matter of Prudential Prop. & Cas. Co. v Szeli,* 83 NY2d 681; *Pommells v Perez,* 4 NY3d 566.)

*Shayne, Dachs, Corker, Sauer & Dachs,* Mineola (*Jonathan A. Dachs* of counsel), and *Allen D. Springer, PLLC,* Brooklyn, for appellants in the second above-entitled proceeding. The order of the Appellate Division should be reversed because it was and is egregiously erroneous and in direct contravention of well-settled law, alters well-established principles of insurance law and practice, appears to invalidate certain regulatory and policy provisions, directly conflicts with prior decisional law, including decisions of this Court, and unnecessarily and improperly injects uncertainty and indefiniteness into a previously settled and well-understood area of the law. (*Martin v City of Cohoes,* 37 NY2d 162; *Stevenson v News Syndicate Co.,* 302 NY 81; *Walrath v Hanover Fire Ins. Co.,* 216 NY 220; *Burger v Fifth Ave. Coach Co.,* 249 NY 583; *Fuchs v Brody,* 282 NY 627; *Orlich v Helm Bros.,* 160 AD2d 135; *Matter of Carroll v Gammerman,* 193 AD2d 202; *Matter of National Assn. of Ind. Insurers v Curiale,* 190 AD2d 597, 81 NY2d 711; *Matter of Vanguard Ins. Co. [Polchlopek],* 18 NY2d 376; *Matter of Nationwide Mut. Ins. Co. v Riccadulli,* 183 AD2d 111.)

*Hiscock & Barclay, LLP,* Rochester (*John R. Casey, Joseph A. Wilson* and *Mark T. Whitford* of counsel), for respondent in the second above-entitled proceeding. I. The tortfeasor's vehicle does not qualify as an "uninsured motor vehicle." (*Matter of Prudential Prop. & Cas. Co. v Szeli,* 83 NY2d 681; *Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso,* 93 NY2d 487; *Raffellini v State Farm Mut. Auto. Ins. Co.,* 9 NY3d 196; *Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.],* 81 NY2d 219; *Matter of Allstate Ins. Co. v Rivera,* 50 AD3d 680, 11 NY3d 709; *Matter of Government Empls. Ins. Co. v Young,* 39 AD3d 751; *Wilson v Hartford Acc. & Indem. Co.,* 246 AD2d 593; *Matter of State Farm Mut. Auto. Ins. Co. v Hollis,* 228 AD2d 685; *Matter of New York Cent. Mut. Fire Ins. Co. v White,* 262 AD2d 415; *Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd.,* 7 NY3d 458.) II. Clarendon National Insurance Company is entitled to an offset for payments received from the tortfeasor's insurer. (*Feigelson v Allstate Ins. Co.,* 31 NY2d 913; *Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342; *Weber v Jacobs,* 289 AD2d 226;

*Gorenstein v Debralaurie Realty Co.,* 280 AD2d 642; *Ciesinski v Town of Aurora,* 202 AD2d 984; *Matter of Silverman [Benmor Coats],* 61 NY2d 299; *Carmo v Verizon,* 13 AD3d 329; *Sprain Brook Manor Nursing Home v Glazer,* 6 AD3d 522; *Matter of Prudential Prop. & Cas. Co. v Szeli,* 83 NY2d 681; *Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.],* 81 NY2d 219.)

*Pollack, Pollack, Isaac & De Cicco,* New York City (*Brian J. Isaac* of counsel), for New York State Trial Lawyers Association, amicus curiae in the second above-entitled proceeding. The Appellate Division decision incorrectly analyzes the pertinent regulations, contracts and legal precedent on point, removing intended protections for motor vehicle accident victims, and should be reversed. (*Matter of Allstate Ins. Co. v Rivera,* 50 AD3d 680.)

### OPINION OF THE COURT

Jones, J.

At issue in both of these appeals is whether supplementary uninsured/underinsured motorists (SUM) coverage was triggered. In both appeals, we conclude that it was not.

In the first appeal, Allstate Insurance Company issued an automobile insurance policy to Petra Mercado that provided bodily injury liability and SUM coverage of $25,000 per person/ $50,000 per accident. In July 2005, while the policy was in effect, Mercado and five passengers in her car were injured when they were struck by a vehicle driven by Nilza Rodriguez and insured by GMAC Insurance Company, which provided the same bodily injury liability coverage as the Allstate policy. GMAC tendered its coverage limit of $50,000, paying $25,000 to Mercado and $5,000 to each of her five passengers. Subsequently, the five passengers sought SUM benefits under the Allstate policy. By letter dated February 20, 2007, Allstate denied SUM coverage, stating that "[s]ince the $50,000 liability policy of Nilza Rodriguez is an offset to our Uninsured Motorist coverage, we will not be able to honor any claims for Uninsured Motorist Coverage under [the Allstate] policy."

In the second appeal, Clarendon National Insurance Company issued an automobile policy to Francisco Nunez with bodily injury liability and SUM coverage of $25,000 per person/$50,000 per accident. In June 2001, while the policy was in effect, Nunez, his wife, and their two children were injured when they were struck by a vehicle insured by Progressive Northwestern

Insurance Company, which provided the same liability coverage as the Clarendon policy. Progressive tendered its policy limit of $50,000, paying $15,000 each to three of the family members and $5,000 to the fourth family member. The Nunez family then sought SUM benefits under the Clarendon policy. By letter dated October 7, 2005, Clarendon denied SUM coverage, stating that "[s]ince the amount the four claimants will receive from Progressive ($50,000) is equal to the SUM limits of the Clarendon policy ($50,000)[,] the four claimants are not entitled to receive any SUM benefits."

The SUM claimants under the Allstate and Clarendon policies demanded arbitration. Allstate and Clarendon (petitioner insurers) each commenced a CPLR article 75 proceeding for a permanent stay of arbitration. In both cases, the SUM claimants (respondents) argued that SUM coverage was triggered under Insurance Department Regulations (11 NYCRR) § 60-2.3 (f).

The Appellate Division ruled for petitioner insurers and permanently stayed arbitration in both cases (50 AD3d 680 [2008]; 48 AD3d 460 [2008]). We granted the SUM claimants in *Matter of Allstate* and *Matter of Clarendon* leave to appeal (11 NY3d 708 [2008]) and now affirm in both cases.

Insurance Law § 3420 provides, in pertinent part:

> "Any [automobile insurance] policy shall, at the option of the insured, also provide supplementary uninsured/underinsured motorists [SUM] insurance for bodily injury, in an amount up to the bodily injury liability insurance limits of coverage provided under such policy . . . *[SUM] insurance shall provide coverage . . . if the limits of liability under all . . . insurance policies of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage provided by such policy. . . .* As a condition precedent to the obligation of the insurer to pay under the [SUM] insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements"
> (Insurance Law § 3420 [f] [2] [A] [emphasis added]).

The plain language of Insurance Law § 3420, therefore, provides that SUM coverage is only triggered where the bodily injury liability insurance limits of the policy covering the tortfeasor's

vehicle are less than the third-party liability limits of the policy under which a party is seeking SUM benefits.

This statute "calls for a facial comparison of the policy limits without reduction from the judgment of other claims arising from the accident" (*Matter of Prudential Prop. & Cas. Co. v Szeli*, 83 NY2d 681, 686 [1994] [held that "underinsured motorist coverage is triggered when the limit of the insured's bodily injury liability coverage is greater than the same coverage in the tortfeasor's policy" (*id.* at 684)]). Further, section 3420 (f) (2) "was enacted to allow policyholders to acquire the same level of protection for themselves and their passengers as they purchased to protect themselves against liability to others" (*Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso*, 93 NY2d 487, 492 [1999], citing Mem of State Exec Dept, 1977 McKinney's Session Laws of NY, at 2445, 2446; *see also Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d 196, 203-204 [2007]; *Szeli*, 83 NY2d at 685-686).

The Legislature may authorize an administrative agency "to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 865 [2003], quoting *Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]). "In so doing, an agency can adopt regulations that go beyond the text of that legislation, provided they are not inconsistent with the statutory language or its underlying purposes" (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254 [2004]). "A duly promulgated regulation that meets these criteria has the force of law" (*Raffellini*, 9 NY3d at 201). However, "if [a] regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980] [citation omitted]). As relevant here, the Legislature has vested the Superintendent of Insurance with "broad power to interpret, clarify, and implement the legislative policy" by promulgating regulations (*Medical Socy.*, 100 NY2d at 863-864, quoting *Ostrer v Schenck*, 41 NY2d 782, 785 [1977]).

In 1992, the Superintendent of Insurance promulgated Insurance Department Regulation 35-D, codified at 11 NYCRR subpart 60-2, which requires that "[e]very SUM endorsement issued shall be the [SUM] Endorsement prescribed by

subdivision (f) of this section" (11 NYCRR 60-2.3 [c]).* Under Regulation 35-D, the term "insured" means:

"(1) you, as the named insured and, while residents of the same household, your spouse and the relatives of either you or your spouse;

"(2) any other person while occupying:

"(i) a motor vehicle insured for SUM under this policy; or

"(ii) any other motor vehicle while being operated by you or your spouse; and

"(3) any person, with respect to damages such person is entitled to recover, because of bodily injury to which this coverage applies sustained by an insured under paragraph (1) or (2) above" (11 NYCRR 60-2.3 [f] [INSURING AGREEMENTS] [I] [a]).

Further, Regulation 35-D defines an "uninsured motor vehicle" as

"a motor vehicle that, through its ownership, maintenance or use, results in bodily injury to an insured, and for which . . .

"(3) there is a bodily injury liability insurance coverage or bond applicable to such motor vehicle at the time of the accident, but; . . .

"(ii) the amount of such insurance coverage or bond has been reduced, by payments to other persons injured in the accident, to an amount less than the third-party bodily injury liability limit of this policy" (11 NYCRR 60-2.3 [f] [INSURING AGREEMENTS] [I] [c] [3] [ii]).

Each co-occupant in the covered vehicles contends that he or she should be allowed to deduct the payments made to other co-occupants, thereby reducing the tortfeasor's bodily injury liability coverage to an amount less than the coverage limits on their vehicle, triggering SUM coverage. The SUM claimants therefore argue that co-occupants constitute "other persons" under the endorsement, even though co-occupants are insureds under the policy. We are unpersuaded.

---

* As Insurance Law § 3420 (f) (2) and Regulation 35-D are in derogation of the common law, they must be narrowly construed.

The "payments to other persons" that may be deducted from the tortfeasor's coverage limits for purposes of rendering the tortfeasor "uninsured" under a SUM endorsement do not encompass payments made to anyone who is an insured under the endorsement. It is important to note that the phrase "other persons" is used elsewhere in the endorsement to denote persons other than those insured under the policy. The notice and proof of claim condition directs that "the insured or other person making claim" shall give written notice of claim "under this SUM coverage" (11 NYCRR 60-2.3 [f] [CONDITIONS] [2]). It is evident that, in the phrase "the insured *or* other person," the reference to "other person" means someone who is not "the insured." As each claimant here falls within the endorsement's definition of an "insured," which encompasses all passengers in the covered vehicle, claimants are not "other person[s]." Insureds are therefore able to reduce the coverage limits of the tortfeasor's policy only when payments made under the tortfeasor's policy are to individuals—such as occupants of the tortfeasor's vehicle, injured pedestrians or those operating a third vehicle—not covered under the SUM endorsement. This guarantees that those who have purchased SUM coverage will receive the same recovery they have made available to third parties they injure—but no more.

The position of the SUM claimants and the dissent notwithstanding, this is the only construction that is consistent with the plain language of Insurance Law § 3420, the enabling legislation that Regulation 35-D must conform to, and the core principle underlying SUM coverage—that insureds can never use a SUM endorsement to obtain a greater recovery for themselves than is provided under the policy to third parties injured by the insureds (*see Raffellini*, 9 NY3d at 203-204; *Mancuso*, 93 NY2d at 492; *Szeli*, 83 NY2d at 687). To demonstrate this principle, we need only look at what would occur in *Matter of Clarendon* were we to adopt the claimants' position. The four members of the Nunez family received $50,000 under the tortfeasor's policy and, by each claimant characterizing the other three family members as "other person[s]," the family now seeks to obtain an additional $50,000 under the SUM coverage provided in their own policy, for a total recovery of $100,000. Yet, if the Nunez vehicle was operated negligently, causing an accident that injured four pedestrians, the total recovery those injured parties could obtain under the Clarendon policy would be $50,000, the per accident limit.

Therefore, reading Insurance Law § 3420 (f) (2), our well-settled interpretation of this statute and Regulation 35-D together, we hold that SUM coverage is not available (that is, SUM coverage cannot be triggered) because (1) the bodily injury liability insurance coverage limits provided under the respective tortfeasors' policies were equal to the third-party bodily injury liability limits of the Allstate and Clarendon policies, (2) the payments made to the SUM claimants did not reduce the amount of the bodily injury insurance coverage provided under the tortfeasors' policies to "an amount less than the third-party bodily injury liability limit of [the Allstate and Clarendon policies]" (11 NYCRR 60-2.3 [f] [INSURING AGREEMENTS] [I] [c] [3] [ii]) and (3) allowing such additional coverage would provide an insured/policyholder with more coverage than that provided to an injured third party under his or her policy.

Accordingly, the orders of the Appellate Division should be affirmed, with costs.

CIPARICK, J. (dissenting). Because the majority improperly forecloses the availability of supplementary uninsured/underinsured motorists (SUM) benefits to claimants, passengers injured in a car accident, by defining them as outside the purview of Insurance Department Regulation 35-D (see 11 NYCRR 60-2.3 [f] [INSURING AGREEMENTS] [I] [c] [3] [ii]) and labeling them as something other than "other persons injured in the accident," I respectfully dissent and would hold that Regulation 35-D's plain language, history and the basic purpose of the SUM coverage provision triggers benefits for claimants.

In *Matter of Allstate*, six claimants were occupants of a vehicle injured in a car accident. The driver of the nonoffending vehicle had an insurance policy issued by Allstate. The offending vehicle was insured by nonparty GMAC Insurance. The GMAC policy provided a coverage amount of $50,000 per accident and $25,000 per person. GMAC paid $25,000 to the driver of the struck vehicle and $5,000 to each of the five other claimants, thereby totaling the $50,000 maximum coverage amount per accident.

Similarly, in *Matter of Clarendon*, four claimants were riding in a vehicle struck by an offending vehicle insured by nonparty Progressive Northwestern Insurance Company. After accepting liability for the accident, Progressive paid out of its $50,000 per accident coverage $15,000 each to three of the claimants and

$5,000 to the fourth claimant, thereby totaling its $50,000 cap per accident. In both cases, the owners of the nonoffending vehicles in which claimants rode had contracted and paid for an insurance plan providing for SUM coverage. Claimants, in both cases, sought SUM coverage for the inadequately recompensed injured persons, but Allstate and Clarendon, respectively, denied their claims.

Today, in denying claimants SUM benefits, the majority reads Regulation 35-D as not having contemplated SUM benefits for claimants, even though they were "other persons injured in the accident." In interpreting the meaning of a regulation, courts must defer to the Superintendent of Insurance's interpretation of his statutorily-vested authority and to his special expertise, unless such interpretation of the statute or regulation is wholly irrational or contrary to its clear meaning (*see Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins. of State of N.Y.*, 72 NY2d 753, 761-762 [1988]). Courts must give effect to the plain words of a regulation and presume that it was crafted carefully to mean what it states in plain and ordinary language.

Regulation 35-D states that a vehicle is underinsured for purposes of triggering SUM coverage where

> "a motor vehicle . . . results in bodily injury to an insured, and for which . . . there is bodily injury liability insurance coverage . . . applicable to such motor vehicle at the time of the accident, but . . . the amount of such insurance coverage . . . has been reduced, by payments to other persons injured in the accident, to an amount less than the third-party bodily injury liability limit of this policy" (*see* 11 NYCRR 60-2.3 [f] [INSURING AGREEMENTS] [I] [c] [3] [ii]).

The majority concludes that vehicle co-occupants are not "other persons injured in the accident" by reading into the regulation a meaning excluding co-claimants as "other persons" and classifying them as "insureds." Co-claimants, however, meet all of the criteria required by the plain language of the regulation to trigger SUM coverage: they are indeed injured parties in a car accident; the drivers/owners of the vehicles had bodily injury liability coverage; and claimants' coverage was reduced by payments made to co-claimants—"other persons." Put simply, when a tortfeasor's coverage is reduced by payments to others—either co-claimants or strangers—less

coverage is available under that policy to compensate them. Accordingly, under Regulation 35-D, claimants must be considered "other persons injured in the accident."

Significantly, Regulation 35-D is silent as to any exception, limitation or other qualification to the phrase "other persons." Nowhere does the regulation exclude as "other persons" a co-passenger or family relative of an insured. If the regulation was meant to exclude a co-passenger, it would have been a simple matter for the drafters to so state, and the regulation's lack of any such exception is powerful evidence that no such limiting gloss was meant to be read into it (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 74). Rather, the regulation's words were intended to mean what they say in ordinary and everyday terms. The majority's rendering of an artificial and strained distinction between vehicle co-occupants and strangers to the insured vehicle in the definition of "other persons injured in the accident" is unwarranted and inconsistent with the plain language of the regulation as incorporated into these insurance policies.

In my view, the language of the SUM provisions is clearly, straightforwardly and unambiguously in favor of triggering SUM coverage for claimants, but to the extent that it can be read as having any ambiguity, the legal consequences of any such lack of clarity in the substance of these insurance contracts should not militate against claimants (*see e.g. Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 325-327 [1996]; *Sperling v Great Am. Indem. Co.*, 7 NY2d 442, 447-449 [1960]; *Mutual Life Ins. Co. of N. Y. v Hurni Packing Co.*, 263 US 167, 176 [1923]). In this regard, insurers have not challenged the regulatory language at issue here at any point as improper, unfair or unauthorized, even when other portions of Regulation 35-D were challenged.

Words of an insurance policy, furthermore, must be viewed from the position of an average person applying common speech (*see Buckner v Motor Veh. Acc. Indem. Corp.*, 66 NY2d 211, 213-214 [1985]; *Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.*, 60 NY2d 390, 398 [1983]). "The language employed in [a] contract of insurance must be given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it" (*City of Albany v Standard Acc. Ins. Co.*, 7 NY2d 422, 430 [1960] [emphasis omitted]; *see also Album Realty Corp. v American Home Assur. Co.*, 80 NY2d 1008, 1010 [1992]). Here, claimants would not have reasonably expected

the language "other persons injured in the accident" to refer to any persons other than those—like themselves—who were injured in a motor vehicle accident. Nor were the owners of the policies in a position to have their form contracts amended, if they so chose, or to otherwise alter the text of Regulation 35-D.

The majority, citing Insurance Law § 3420 (f) (2) (A), argues that SUM coverage is available only where the policy limits of a tortfeasor's vehicle are less than the third-party limits of the policy providing for SUM benefits (*see* majority op at 607-608), but the Superintendent of Insurance has been vested with the authority to promulgate rules and regulations that may expand upon such definitions (*see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 863-864 [2003]; *Ostrer v Schenck*, 41 NY2d 782, 785 [1977]). In promulgating Regulation 35-D, which the majority does not here challenge, the Superintendent was well within his authority to broaden the definition of an uninsured motor vehicle (*see e.g. Matter of American Mfrs. Mut. Ins. Co. v Morgan*, 296 AD2d 491 [2d Dept 2002]; *Matter of New York Cent. Mut. Fire Ins. Co. v White*, 262 AD2d 415 [2d Dept 1999]), as well as that of an underinsured motor vehicle (*see Matter of Allstate Ins. Co. v Sung Sun Ju*, 56 AD3d 551 [2d Dept 2008]).

In addition, the majority looks for support in the notice and proof of claim provision (*see* 11 NYCRR 60-2.3 [f] [CONDITIONS] [2]), where there is a distinction between "the insured or other person making claim," and injects that distinction into the plain language of the regulation at issue (*see* majority op at 610). There is no evidence, however, that the language found in the notice and proof of claim provision can be interpreted to rule out the possibility that claimants in the SUM coverage provision, who the majority claims fall within the endorsement's definition of an "insured," cannot be deemed "other persons." On the contrary, the fact that when the drafters intended to make such a distinction between the insured and other persons they did so in clear and unambiguous language is telling that no such distinction here was intended.

Moreover, providing SUM coverage to claimants is not, as the majority states, contrary to the purpose and history of SUM coverage. New York's uninsured and underinsured motorist protection statutes were enacted to protect innocent victims of motor vehicle accidents caused by motorists who, for whatever reason, could not be counted on to make their victims whole (*see Matter of Vanguard Ins. Co. [Polchlopek]*, 18 NY2d 376, 381 [1966]).

With that purpose in mind, SUM coverage "is designed to increase the level of protection afforded to policyholders injured by negligent drivers who lack adequate liability insurance" (*Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso*, 93 NY2d 487, 492 [1999]). It was devised to mitigate the liability coverage deficit caused by an inadequately insured vehicle— underinsured vehicles. It was not meant to be restricted to uninsured motorists. Here, where there appears to be a parity between the policies, in a motor vehicle accident involving numerous passengers, the tortfeasor's liability will be dramatically less than the per person coverage under the claimant's policy. SUM coverage was meant to alleviate this liability gap.

In conclusion, I believe that the majority has read into Regulation 35-D an unwarranted and unreasonable limitation to exclude claimants from SUM coverage. Clearly, claimants meet the expressly written criteria for SUM coverage. Most notably, they are "other persons injured in the accident," and thus should receive SUM benefits. Accordingly, I respectfully dissent and would reverse the orders of the Appellate Division.

Judges GRAFFEO, READ, SMITH and PIGOTT concur with Judge JONES; Judge CIPARICK dissents and votes to reverse in a separate opinion in which Chief Judge LIPPMAN concurs.

In each case: Order affirmed, with costs.