[939 NYS2d 761]

In the Matter of SULLIVAN FINANCIAL GROUP, INC., et al., Appellants, v JAMES J. WRYNN, as Superintendent of Insurance, Respondent.

Third Department, March 8, 2012

## APPEARANCES OF COUNSEL

*Keidel, Weldon & Cunningham, L.L.P.,* White Plains (*James C. Keidel* of counsel), for appellants.

*Eric T. Schneiderman, Attorney General,* New York City (*Matthew W. Grieco* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, A.P.J.

In January 2010, the Insurance Department* issued regulation No. 194, which is entitled "Producer Compensation Transparency" and codified at 11 NYCRR part 30. The regulation requires insurance producers—defined as insurance intermediaries such as brokers or agents who advise purchasers seeking to buy insurance (see Insurance Law § 2101 [k])—to disclose a description of their role in the sale of insurance, whether they will receive compensation from the insurer or a third party, and factors that may affect their compensation (11 NYCRR 30.3 [a]). The producer must provide additional disclosure if the purchaser requests detailed information about the compensation that the producer expects to receive through the insurer (11 NYCRR 30.3 [b], [c]). The regulation is intended to "regulat[e] the acts and practices of insurers and insurance producers with respect to transparency of compensation paid to insurance producers and their role in insurance transactions in this State[,] and . . . to protect the interests of the public by establishing minimum disclosure requirements" with respect to the same (11 NYCRR 30.1).

Petitioners are licensed insurance producers or organizations that represent the interests of insurance producers. They commenced this CPLR article 78 proceeding seeking to annul 11 NYCRR part 30. Supreme Court dismissed the petition and entered judgment in favor of respondent. Petitioners now appeal, arguing that respondent exceeded the scope of his authority in issuing 11 NYCRR part 30. We disagree.

As petitioners note, it is "a fundamental principle of administrative law that agencies are possessed of only those powers expressly delegated by the Legislature, together with those powers required by necessary implication" (Matter of Beer Garden v New York State Liq. Auth., 79 NY2d 266, 276 [1992]; see Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480 [1978]). Even under a broad grant of authority, "[a]n agency cannot by its regulations effect its vision of societal policy choices, and may adopt only rules and regulations which are in harmony with the statutory responsibilities it has been given to administer" (Matter of Campagna v Shaffer, 73 NY2d 237, 242-243 [1989] [citations omitted]; see Matter of

---

* In October 2011, the Insurance Department and Banking Department merged to form the Department of Financial Services (see Financial Services Law § 102; L 2011, ch 62, § 1).

*Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 865 [2003]; *Matter of Health Ins. Assn. of Am. v Corcoran*, 154 AD2d 61, 74-75 [1990], *affd on op below* 76 NY2d 995 [1990]). Notwithstanding those limitations upon respondent's authority, "there is a manifest distinction between the legislative power to be exercised only by that body and an ancillary power to implement the policies enacted into law" (*Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]). The Legislature is therefore free to declare a primary standard and, after making the critical policy decisions, authorize respondent "to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d at 865 [internal quotation marks and citation omitted]; *accord Matter of Allstate Ins. Co. v Rivera*, 12 NY3d 602, 608 [2009]).

In that regard, it is settled that respondent "has 'broad power to interpret, clarify, and implement the legislative policy' " in administering the Insurance Law (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d at 863-864, quoting *Ostrer v Schenck*, 41 NY2d 782, 785 [1977]; *accord Matter of Allstate Ins. Co. v Rivera*, 12 NY3d at 608; *Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d 196, 201 [2007]; *see* Insurance Law § 301). Moreover, "[i]n so doing, [respondent] can adopt regulations that go beyond the text of [the Insurance Law], provided [the regulations] are not inconsistent with the statutory language or its underlying purposes" (*Matter of Allstate Ins. Co. v Rivera*, 12 NY3d at 608 [internal quotation marks and citation omitted]; *see Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d at 201). Thus, a regulation promulgated by respondent, " 'if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision' " (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d at 864, quoting *Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.*, 66 NY2d 444, 448 [1985]; *see Ostrer v Schenck*, 41 NY2d at 785-786).

■ We agree with Supreme Court that respondent's authority to issue 11 NYCRR part 30 is grounded in Insurance Law article 21, which vests respondent with authority over the licensing and discipline of insurance producers. Indeed, petitioners concede that article 21 charges respondent with ensuring that licenses are issued only to trustworthy and competent producers, as well as with disciplining licensees, including the rev-

ocation or suspension of the license of a producer or broker who has demonstrated untrustworthiness (*see* Insurance Law § 2104 [a]; § 2110 [a]). The legislative policy underlying this delegation of authority to respondent is stated as the "protect[ion of] the public by requiring and maintaining professional standards of conduct on the part of all insurance brokers acting as such within this state" (Insurance Law § 2104 [a]. [2]). Contrary to petitioners' arguments, then, 11 NYCRR part 30 was "not promulgate[d] . . . on a blank slate without any legislative guidance" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d at 865); rather, the regulation is an implementation of the legislative policy underlying Insurance Law article 21.

While petitioners assert that no specific legislative policy exists with respect to producer compensation inasmuch as the Legislature has yet to pass on a rule for disclosure of third-party compensation paid to insurance agents and brokers, "the absence of a specific statutory delegation of authority . . . does not bar the challenged regulations" (*id.* at 866). Nor does the Legislature's consideration of and refusal to pass a bill confirm that it has not adopted *any* policy that could stand as a basis for 11 NYCRR part 30, as petitioners argue. "The Legislature's failure to enact [a requirement that third-party compensation be disclosed], despite having repeatedly considered doing so, . . . evinces a legislative preference to yield to administrative expertise in filling in an interstice in the statutory scheme by the setting of such [a requirement]" (*id.*).

We further reject petitioners' contentions that 11 NYCRR part 30 runs counter to the language of Insurance Law §§ 2110 and 2119, as well as sound practices previously sanctioned by the common law. Petitioners argue that Insurance Law article 21 cannot be read as authorizing respondent to regulate standards of producer conduct on an ongoing basis because it mandates that a determination of incompetence or untrustworthiness may be made only upon notice and a hearing (*see* Insurance Law § 2110 [a]). In our view, however, the requirement of due process in the revocation or suspension of individual licenses does not prohibit respondent from setting more general standards regarding the disclosure of third-party compensation in seeking to promote "trustworthiness" and curtail fraudulent practices, as contemplated by the statute.

Similarly, 11 NYCRR part 30 is not inconsistent with Insurance Law § 2119, which requires that a producer obtain a memorandum signed by the party to be charged if the producer

charges *an insured* a fee for advice or recommendations, or receives a payment other than commissions *from the insured.* The statute is "a specialized Statute of Frauds" (*Henry L. Fox Co. v Kaufman Org.*, 74 NY2d 136, 138 [1989]) that "regulate[s] fees other than commissions . . . [and] protects insureds from unscrupulous insurance brokers who could otherwise charge [the insured] additional fees without the insured's knowledge" (*Gibbons v DeWitt Stern Group*, 289 AD2d 196, 197 [2001]; *see Henry L. Fox Co. v Kaufman Org.*, 74 NY2d at 140). While petitioners are correct that section 2119 does not require producers to disclose to insureds that they may receive compensation *from insurers*, the statute's silence on the issue does not imply that the Legislature intended to prohibit respondent from issuing regulations requiring such disclosure in response to an escalating fraud problem (*see Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d at 201-202). Rather, as Supreme Court noted, the statute and regulation are directed at entirely different problems—Insurance Law § 2119 is intended "[t]o protect insureds from unsubstantiated demands for compensation" (*Henry L. Fox Co. v Kaufman Org.*, 74 NY2d at 140), whereas 11 NYCRR part 30 is designed to promote transparency with respect to the potential conflict of interest that arises when a producer is offered incentive-based compensation by an insurer (*see* 11 NYCRR 30.1). Given these very different purposes, it cannot be said that a conflict exists between the regulations and section 2119 or that respondent has "bestow[ed] upon himself the power to bypass or shortcut [a] legislative prescription" (*Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation*, 75 NY2d 88, 93 [1989]; *cf. Matter of Campagna v Shaffer*, 73 NY2d 237, 243-244 [1989], *supra*; *Under 21, Catholic Home Bur. for Dependent Children v City of New York*, 65 NY2d 344, 358-359 [1985]).

■ Furthermore, we agree with Supreme Court that there is no inconsistency between 11 NYCRR part 30 and the limited duties owed by a producer to an insured at common law. While petitioners are correct that, absent a special relationship, an insurance producer has no duty to disclose incentive arrangements with insurance companies (*see People v Wells Fargo Ins. Servs., Inc.*, 16 NY3d 166, 170-171 [2011]), there is nothing in the case law forbidding respondent from requiring disclosure. Indeed, the Court of Appeals has expressly noted that "nondisclosure may be a bad practice . . . A regulation, prospective in effect, is a much better way of ending a questionable but com-

mon practice than . . . outlaw[ing] the practice retroactively by creating a new common-law rule" (*id.* at 171-172).

■ Thus, inasmuch as 11 NYCRR part 30 "is not in conflict with any positive provision of the Insurance Law," the only remaining question is whether the regulation has "a rational basis" (*Ostrer v Schenck*, 41 NY2d 782, 789 [1977], *supra*). Contrary to petitioners' argument that there is no factual predicate justifying the issuance of the regulation, the regulatory impact statement for the adoption of 11 NYCRR part 30 indicates that the need for the regulation became apparent after a joint investigation by the Insurance Department and New York State Office of the Attorney General revealed criminal bid-rigging and steering schemes involving numerous insurers and producers. The investigation demonstrated that insurance producers regularly receive incentive-based compensation from insurers, and that these payments influence producers' recommendations to their clients. From 2005 to 2007, the Attorney General entered into settlement agreements and regulatory stipulations with a number of major insurers and brokers, resulting in more than $1 billion in compensation paid to consumers harmed by bid-rigging and improper steering. Respondent additionally learned from consumer representatives that individual purchasers of insurance are often unaware that producers are paid incentive-based compensation and do not understand the role of insurance producers.

Under these circumstances, respondent rationally determined that, while incentive-based compensation need not be banned or limited, disclosure of such compensation structures would promote needed transparency and arm consumers with relevant information regarding the role of insurance producers and the compensation that they receive. As respondent asserts, the potential for conflicts of interest and the need for greater consumer awareness are more than sufficient factual predicates for 11 NYCRR part 30. Although petitioners contend that the regulation is not likely to effectively increase transparency or protect consumers for a variety of reasons—they maintain, for example, that consumers will only be further confused by the disclosure of complex compensation arrangements and that the regulation is not cost effective or rationally limited to "untrustworthy" conduct—it is not the role of the courts to second-guess respondent's expert judgment regarding the efficacy of the regulation in protecting consumers from bid-rigging and steering schemes (*see Matter of Medical Socy. of State of N.Y. v*

*Serio,* 100 NY2d at 867). Rather, inasmuch as 11 NYCRR part 30 is a reasonable exercise of respondent's broad power to implement the Insurance Law, and is "neither irrational nor unreasonable, neither arbitrary nor capricious, the regulations must be upheld" (*id.; see Ostrer v Schenck,* 41 NY2d at 788-789).

Petitioners' remaining arguments are either unpreserved or, upon consideration, have been found to be lacking in merit.

ROSE, SPAIN, MALONE JR. and McCARTHY, JJ., concur.

Ordered that the judgment is affirmed, without costs.