OPINION OF THE COURT
Eileen A. Rakower, J.
Petitioner, the City of New York, brings this CPLR article 78 proceeding to vacate and annul the decision of the New York State Industrial Board of Appeals (IBA), docket Nos. PES 10-003, PES 10-004, PES 10-005, PES 10-016, PES 11-007, dated June 13, 2013, which upheld the Commissioner of Labor’s authority to issue citations for violations of certain city regulations promulgated to enforce the Workplace Violence Prevention Act (WVPA), codified at Labor Law § 27-b, via the Public Employee Safety and Health Act (PESHA), codified at Labor Law § 27-a. Petitioner claims that the IBA’s decision to uphold the challenged citations is arbitrary, capricious, and contrary to law because the Department of Labor (DOL) exceeded the scope of its constitutional authority in promulgating and enforcing the rules that gave rise to the challenged citations, and because the regulations at issue improperly remove terms of employment associated with health and safety from collective bargaining.
The New York State Department of Labor, Public Employee Safety and Health Bureau (PESH), issued the citations in question against four public employers, the New York City Department of Citywide Administrative Services (DCAS), the New York City Department of Parks and Recreation (DPR), the New York City Department of Health and Mental Hygiene (DOHMH), and the Fire Department of the City of New York (FDNY) (collectively, the city agencies), for various violations of the workplace violence prevention program requirements articulated in 12 NYCRR 800.6, commonly known as Code Rule 800.6 “Public Employer Workplace Violence Prevention Programs.” Respondents, the Commissioner of Labor (the Commissioner), New York State Industrial Board of Appeals, and District *614 Council 37, AFSCME, AFL-CIO (collectively, respondents), oppose.
The Municipal Labor Committee (MLC) moves for leave to appear as amicus curiae, and joins respondents to respectfully request that the court uphold the IBA’s decision.
The court heard oral argument on petitioner’s petition (motion sequence No. 001) and entertained MLC’s motion for leave to appear as amicus curiae (motion sequence No. 002) on May 15, 2014.
On December 15, 2009, PESH conducted an inspection at the offices of the Department of Citywide Administrative Services, located at One Centre Street, New York, New York, 10007, in response to a complaint alleging that DCAS did not include union participation in the development of, or risk assessment for, the agency’s workplace violence prevention program. PESH issued a notice of violation (NOV), dated January 14, 2010, citing DCAS for four violations of PESH workplace violence prevention regulations, along with an investigation narrative, dated December 21, 2009.
Citation 1, item 1 on the DCAS NOV reads as follows:
“12 NYCRR 800.6(e)(1): The employer did not develop and implement a written policy statement on the employer’s workplace violence prevention program goals and objectives.
“a) NYCDCAS - The employer did not have a written policy statement.
“LOCATION ‘CITYWIDE.’ ”
Citation 1, item 2 on the DCAS NOV reads as follows:
“12 NYCRR 800.6(f)(3): The employer did not include the participation of authorized employee representatives, during the evaluation of the workplace to determine the presence of factors which may place employees at risk of workplace violence.
“a) NYCDCAS - The evaluation of the workplace was done without the participation of an authorized employee representative.
“LOCATION ‘CITYWIDE.’ ”
Citation 1, item 3 on the DCAS NOV reads as follows:
“12 NYCRR 800.6(g)(1): The employer with 20 or more full time permanent employees did not develop a written workplace violence prevention program with the participation of authorized employee repre *615 sentative(s).
“a) NYCDCAS - An authorized employee representative did not participate in the development of the employer’s workplace violence prevention program. “LOCATION ‘CITYWIDE.’ ”
Citation 1, item 4 on the DCAS NOV reads as follows:
“12 NYCRR 800.6(h)(1): The employer did not provide each employee with information and training on the risks of violence in their workplace or workplaces at least annually.
“a) NYCDCAS - The employer did not provide the employees with training on the risk of violence in their workplace.
“LOCATION ‘CITYWIDE.’ ”
The DCAS narrative further states, “Hazards alleged in the complaint are listed as follows: a) The Workplace Violence Program did not include union participation in its development or risk assessment.”
On December 16, 2009, PESH conducted an inspection at the offices of the Department of Parks and Recreation, located at The Arsenal West, 24 West 61st Street, 4th Floor, New York, NY 10023, in response to a complaint alleging that DPR did not meet deadlines for the workplace violence prevention regulation and did not include an authorized employee representative in its workplace violence prevention risk assessment and records review. PESH issued an NOV dated January 14, 2010, citing DPR for four violations of PESH workplace violence prevention regulations, along with an investigation narrative, dated December 28, 2009.
Citation 1, item 1 on the DPR NOV reads as follows:
“12 NYCRR 800.6(e)(1): The employer did not develop and implement a written policy statement on the employer’s workplace violence prevention program goals and objectives.
“a) NYCDP & R - The employer did not have a written policy statement.
“LOCATION ‘CITYWIDE.’ ”
Citation 1, item 2 on the DPR NOV reads as follows:
“12 NYCRR 800.6(f)(3): The employer did not include the participation of authorized employee representatives, during the evaluation of the workplace to determine the presence of factors which *616 may place employees at risk of workplace violence.
“a) NYCDP & R - The evaluation of the workplace was done without the participation of an authorized employee representative.
“LOCATION ‘CITYWIDE.’ ”
Citation 1, item 3 on the DPR NOV reads as follows:
“12 NYCRR 800.6(g)(1): The employer with 20 or more full time permanent employees did not develop a written workplace violence prevention program with the participation of authorized employee representative(s).
“a) NYCDP & R - An authorized employee representative did not participate in the development of the employer’s workplace violence prevention program.
“LOCATION ‘CITYWIDE.’ ”
Citation 1, item 4 on the DPR NOV reads as follows:
“12 NYCRR 800.6(h)(1): The employer did not provide each employee with information and training on the risks of violence in their workplace or workplaces at least annually.
“a) NYCDP & R - The employer did not provide the employees with training on the risk of violence in their workplace.
“LOCATION ‘CITYWIDE.’ ”
The DPR narrative further states, “Hazards alleged in the complaint are listed as follows: a) The agency has not met deadlines for the Workplace Violence Regulation and did not include an authorized employee representative in its risk assessment and records review.”
On December 17, 2009, PESH conducted an inspection at the offices of the Department of Health and Mental Hygiene, located at 125 Worth Street, New York, NY 10013, in response to a complaint alleging that DOHMH did not meet deadlines for the workplace violence prevention regulation and did not include union participation in its workplace violence prevention risk assessment and program development. PESH issued an NOX dated January 14, 2010, citing DOHMH for four violations of PESH workplace violence prevention regulations, along with an investigation narrative, dated December 29, 2009.
Citation 1, item 1 on the DOHMH NOV reads as follows:
“12 NYCRR 800.6(e)(1): The employer did not *617 develop and implement a written policy statement on the employer’s workplace violence prevention program goals and objectives.
“a) NYCDOHMH - The employer did not have a written policy statement on the workplace violence prevention program goals and objectives.
“LOCATION ‘CITYWIDE.’ ”
Citation 1, item 2 on the DOHMH NOV reads as follows:
“12 NYCRR 800.6(f)(3): The employer did not include the participation of authorized employee representatives, during the evaluation of the workplace to determine the presence of factors which may place employees at risk of workplace violence.
“a) NYCDOHMH - The evaluation of the workplace was done without the participation of an authorized employee representative.
“LOCATION ‘CITYWIDE.’ ”
Citation 1, item 3 on the DOHMH NOV reads as follows:
“12 NYCRR 800.6(g)(1): The employer with 20 or more full time permanent employees did not develop a written workplace violence prevention program with the participation of authorized employee representative(s).
“a) NYCDOHMH - An authorized employee representative did not participate in the development of the employer’s workplace violence prevention program.
“LOCATION ‘CITYWIDE.’ ”
Citation 1, item 4 on the DOHMH NOV reads as follows:
“12 NYCRR 800.6(h)(1): The employer did not provide each employee with information and training on the risks of violence in their workplace or workplaces at least annually.
“a) NYCDOHMH - The employer did not provide the employees with training on the risk of violence in their workplace.
“LOCATION ‘CITYWIDE.’ ”
The DOHMH narrative further states, “Hazards alleged in the complaint are listed as follows: a) The agency has not met deadlines for the Workplace Violence Regulation and did not include an authorized employee representative in its risk assessment and records review.”
On March 8, 2010, PESH conducted an inspection at the headquarters of the Fire Department of the City of New York, lo *618 cated at 9 MetroTech Center, Brooklyn, New York 11201, in response to a complaint alleging violations of the workplace violence prevention regulations set forth in title 12 of the Codes, Rules and Regulations of the State of New York, section 800.6. PESH issued an NOy dated July 19, 2010, citing FDNY for three violations of PESH workplace violence prevention regulations, along with an investigation narrative, dated May 10, 2010. Citation 1, item 1 on the FDNY NOV reads as follows:
“12 NYCRR 800.6(e)(1): The employer did not develop and implement a written policy statement on the employer’s workplace violence prevention program goals and objectives.
“a) FDNY New York City wide locations - Universal Violation - The inspector requested a copy of the employer’s Workplace Violence Prevention Policy statement during the inspection. The employer’s representative, Deputy General Counsel Elena Fen-era, did not provide a copy of the FDNY Workplace Violence Prevention Policy statement for all FDNY worksites during the inspection. The employer’s policy statement shall include all elements that are listed in 12 NYCRR Part 800.6(e)(l)(i) and (ii).”
Citation 1, item 3 on the DOHMH NOV reads as follows:
“12 NYCRR 800.6(g)(1): The employer with 20 or more full time permanent employees did not develop a written workplace violence prevention program with the participation of authorized employee representative^).
“a) FDNY New York City wide locations - Universal Violation - The inspector requested a copy of the employer’s workplace violence prevention program during the inspection. The employer’s representative, Deputy General Counsel, Elena Ferrera, did not provide a written workplace violence prevention program for all FDNY worksites to the inspector during the inspection. The employer’s representative, Deputy General Counsel, Elena Ferrera, stated that FDNY had solicited input from union representatives during the development and implementation of the FDNY Command Orders pertaining to workplace violence prevention prior to the enactment of 12 NYCRR [part] 800. The union representative, Guillermina Mejia, from District Council 37 stated that the employer did not solicit input *619 fiom the authorized employee representative during the development of the draft FDNY Workplace Violence Program or during the development and implementation of FDNY Command Orders pertaining to workplace violence prevention. The employer’s representative, Deputy General Counsel, Elena Ferrera, did not provide documentation demonstrating that FDNY solicited input from the authorized employee representatives during the development of FDNY Command Orders pertaining to workplace violence prevention for all FDNY worksites. The employer did not develop a written violence prevention program that meets the requirements of 12 NYCRR Part 800.6(g)(2)(I) through (viii).”
On February 23, 2010, March 5, 2010, March 12, 2010, and September 20, 2010, respectively, DCAS, DPR, DOHMH, and FDNY filed separate petitions with the IBA challenging the PESH NOVs issued against them. On application of the Commissioner, and without opposition, the city agency cases were consolidated as raising identical questions of law. The city agencies designated a single lead attorney, and District Council 37 and the MLC intervened in the consolidated cases without objection.
In their petitions, the city agencies challenged the validity of the NOVs and corresponding narratives on the grounds that the subject violations were improperly issued under PESHA, codified at Labor Law § 27-a, rather than pursuant to the WVPA, codified at Labor Law § 27-b. The city agencies also argued that the NOVs are invalid because the PESH inspections underlying the NOVs in question failed to satisfy certain WVPA preconditions for inspections.
Additionally, in their petitions, the city agencies argued that the WVPA, rather than PESHA, should govern citations and inspections relating to the hazard of workplace violence, as well as employer workplace violence prevention programs, because the regulations cited in the NOVs were promulgated to implement the WVPA. The city agencies further argued that the regulations are not authorized under their enabling statute, the WVPA, and that the NOVs were unreasonable and invalid as a result.
Specifically, with respect to citation 1 item 1 of the NOVs, the city agencies argued that PESH lacked statutory authority to require the city agencies to “develop and implement a written Workplace Violence Policy Statement” because the WVPA *620 simply requires employers to develop and implement a written workplace violence prevention program, as specified in Labor Law § 27-b (4), and does not require a written workplace violence policy statement.
With respect to citation 1 item 2 of the NOVs, the city agencies argued that PESH lacks statutory authority to require a public employer to “include the participation of authorized employee representatives during the evaluation of the workplace” because the WVPA contains no such requirement respecting authorized employee representatives, and because the WVPA assigns this responsibility solely to the employer. Similarly, with respect to citation 1 item 3 of the NOVs, the city agencies argued that PESH lacks statutory authority to compel a public employer to include authorized employee representatives in the development of the written workplace violence prevention program because the WVPA contains no such requirement, and because the WVPA assigns this responsibility solely to the employer.
The city agencies also argued that PESH lacks statutory authority to compel a public employer to include authorized employee representatives in the development of its written workplace violence prevention program because such a requirement would conflict with the Taylor Law (Civil Service Law § 200 et seq.) and the New York City Collective Bargaining Law (NYCCBL) (Administrative Code of City of NY, tit 12, ch 3), to the extent that the requirement removes the issue of safety and health program development from collective bargaining without clear legislative direction. Likewise, the city agencies argued requiring union participation in the evaluation of the workplace intrudes into the Taylor Law and the NYCCBL by removing this subject from collective bargaining, and by granting a valuable right to unions which was not bargained for by the parties to collective bargaining.
In their petitions, the city agencies also requested a stay of enforcement of the NOVs during pendency of the Board proceedings, pursuant to Board Rule 66.9. On June 17, 2011, the IBA issued a 20-page interim resolution of decision (the interim decision), denying the city petitioners’ application for a stay. The interim decision discusses petitioner’s arguments respecting each of the challenged citation items in turn. The parties agreed to confer and file a stipulation of facts and a notice narrowing the issues for the Board to decide. The parties filed the stipulation of facts with the IBA on August 15, 2012, and filed legal *621 briefs thereafter. On March 20, 2013, the IBA heard oral argument on the city agencies’ claims. At oral argument, the parties agreed that if the IBA adopted its interim decision, there would be no remaining issues to decide. On June 12, 2013, the IBA issued the resolution of decision (the decision), adopting the interim decision, denying the city agencies’ collective petition, and affirming the NOVs.
In the decision, the IBA found that the WVPA is enforced through PESHA, and that the Commissioner properly issued the NOVs under PESHA, rather than the WVPA. The IBA also found that the Commissioner had authority to conduct the inspections underlying the NOVs.* The IBA rejected the city agencies’ argument that the WVPA is the sole enabling statute for the regulations governing workplace violence prevention, and found that the regulations implementing the WVPA are standards enforceable under PESHA (Labor Law § 27-a), since the regulations were adopted in accordance with provisions of Labor Law § 27-a (4) (b).
The IBA also found that, although the regulatory requirements concerning the written policy statement and authorized employee representatives went beyond the text of the WVPA statute, these requirements permissibly fill in the interstices of the WVPA. To this end, the IBA found that involving the employees in the evaluation of their workplaces was entirely consistent with the legislative purposes and statutory language of the WVPA.
On August 23, 2013, petitioner brought the instant proceeding, pursuant to CPLR article 78, to challenge the IBA’s June 12, 2013 decision.
Petitioner’s instant petition asserts that the IBA’s decision is “without legal or logical foundation and is arbitrary and capricious” because it “erroneously found that the Department of Labor, in implementing and enforcing provisions of its Workplace Violence Prevention Regulations (12 NYCRR Part 800.6), did not act in excess of its regulatory role by impermissibly adding to or modifying provisions of the WVPA” and because the decision “erroneously found that union participation rights are mandated by the WVPA, pursuant to the Department of Labor’s regulations rather than any part of the WVPA statute.”
*622 Additionally, the petition asserts, “IBA’s conclusion that the cited regulations are enforceable through the provisions of the PESH Act rather than through the provisions of the regulations’ enabling statute, the WVPA is without any legal foundation and constitutes an error of law.” The petition further states, “the IBA’s June 12, 2013 decision was made in violation of a lawful procedure, was affected by an error of law, and was arbitrary and capricious. Therefore, the IBA’s decision should be reversed, vacated, annulled, and set aside.”
Respondents, in turn, argue that petitioner’s petition should be dismissed because the IBA’s decision provides a reasoned and lengthy assessment of petitioner’s claims. Respondents argue that PESHA and the WVPA may stand together in governing the regulations at issue, and that the challenged regulations are consistent with the legislative purpose of the WVPA, as well as with the Taylor Law.
Respondents also argue that the Taylor Law governs the relationship between parties to a collective bargaining agreement, and acts as a “shield” for employees against employer overreaching, because public employees have given up their right to strike. Respondents argue that the Taylor Law is not a “sword” for employers to use against regulatory agencies, which may set minimum standards and requirements for union and nonunion employees without impermissibly removing the entire subject of “safety and health” from collective bargaining.
It is well settled that judicial review of administrative decisions is extremely limited. (Matter of Yarbough v Franco, 95 NY2d 342, 347 [2000].) Unless the agency’s decision is arbitrary and capricious or affected by an error of law, it must be upheld; the test is essentially one of rationality. (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].) Once the court finds a rational basis exists for the agency’s determination, its review is ended. (Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 277-278 [1972].)
Here, the IBA carefully addressed and directly rejected petitioner’s arguments, which are essentially the same as those presented here. The IBA decision includes a reasoned and thorough analysis of the law, and its conclusions have a rational basis.
With respect to petitioner’s contention that the regulations at issue were improperly promulgated under PESHA, as opposed to the WVPA, “[t]he WVPA provides a general mechanism for, *623 inter alia, evaluating the risk of workplace violence and creating employer plans to address it.” (Matter of City of New York v Commissioner of Labor, 100 AD3d 519, 520 [1st Dept 2012].) PESHA, on the other hand, imposes an
“affirmative obligation ... on employers to provide a workplace free from recognized hazards that are causing or likely to cause death or serious physical injury, and with reasonable and adequate protection to employees’ lives, safety and health. Thus, . . . the two statutes are not inconsistent here and can both be given effect when they stand together.” (Id.)
As for petitioner’s contention that the DOL lacks statutory authority to promulgate and enforce the regulations concerning the written policy statement and authorized employee representatives,
“[t]he Legislature may authorize an administrative agency to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation. In so doing, an agency can adopt regulations that go beyond the text of that legislation, provided they are not inconsistent with the statutory language or its underlying purposes. A duly promulgated regulation that meets these criteria has the force of law. However, if [a] regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight.” (Matter of Allstate Ins. Co. v Rivera, 12 NY3d 602, 608 [2009] [citations and internal quotation marks omitted].)
Section 27 (3) of the Labor Law authorizes the Commissioner to “promulgate such regulations as he shall consider necessary and proper to effectuate the purposes and provisions of this section.”
The WVPA provides, “[t]he purpose of this section is to ensure that the risk of workplace assaults and homicides is evaluated by affected public employers and their employees and that such employers design and implement workplace violence protection programs to prevent and minimize the hazard of workplace violence to public employees.” (Labor Law § 27-b [1].)
The statutory language of the WVPA requires public employers to “develop and implement a written workplace violence prevention program for its workplace or workplaces” that includes “a list of the risk factors identified in subdivision three of this section that are present in such workplace or work *624 places,” as well as, “the methods the employer will use to prevent incidents of occupational assaults and homicides at such workplace or workplaces, including but not limited to” the various factors enumerated therein. (Labor Law § 27-b [4] [a], [b].)
The WVPA also requires public employers to provide its employees with information and training “on the risks of occupational assaults and homicides in their workplace or workplaces” and further provides, “employees shall be informed of the requirements of this section, the risk factors in their workplace or workplaces, and the location and availability of the written workplace violence prevention program required by this section.” (Labor Law § 27-b [5] [b]; [5] [b] [1].)
Here, the Commissioner is authorized to adopt regulations that go beyond the text of the WVPA in order to fill in the interstices in the legislative product, provided that such regulations are not inconsistent with the statutory language or its underlying purposes.
The challenged regulation pertaining to the written statement provides, “[t]he policy statement shall briefly indicate the employer’s workplace violence prevention policy and incident alert and notification policies for employees to follow in the event of a workplace violence incident.” (12 NYCRR 800.6 [e] [1] [ii].) Accordingly, this regulation is not inconsistent with the statutory language of the WVPA or its underlying purpose, and is permissible to fill in the interstices of this legislation.
As for the challenged regulatory provisions concerning authorized employees, the challenged regulations require employee “participation” in the evaluation of the workplace and the development of the workplace violence prevention program. These regulations are not inconsistent with the stated purpose of the WVPA.
Moreover, the requirements for employee “participation” do not constitute an “employee veto” or “employee control” over the workplace evaluations or workplace violence prevention programs. Such requirements leave room for collective bargaining, and do not impermissibly conflict with the Taylor Law. Accordingly, the challenged provisions relating to authorized employees are not inconsistent with the statutory language of the WVPA or its underlying purpose, and are permissible to fill in the interstices of this legislation.
Wherefore, it is hereby ordered and adjudged that MLC’s motion for leave to appear as amicus curiae (motion sequence No. *625 002) is granted, as reflected in the minutes dated May 15, 2014; and it is further, ordered and adjudged that the petition (motion sequence No. 001) is denied.
All other relief requested is denied.

 Petitioner claims that the IBA erroneously included this finding in the decision, as the issue was withdrawn from consideration in the parties’ August 15, 2012 stipulation.