OPINION OF THE COURT
Peters, P.J.
Respondents, the Office of Parks Recreation and Historic Preservation (hereinafter OPRHP) and its Commissioner, are empowered by statute to “[o] per ate and maintain . . . historic sites and objects, parks, parkways and recreational facilities” (PRHPL 3.09 [2]) and to “[p]rovide for the health, safety and welfare of the public using facilities under its jurisdiction” *107 (PRHPL 3.09 [5]). In February 2013, pursuant to this statutory authority, OPRHP adopted a rule establishing smoke-free areas in certain limited outdoor locations under its jurisdiction (see 9 NYCRR 386.1). Such regulation, among other things, also prohibits smoking in each state park located in New York City, with limited exceptions (see 9 NYCRR 386.1 [a] [2]).[1] OPRHP announced that this rule was needed in order to allow “patrons to enjoy the outdoors, breathe fresh air, walk, swim, exercise and experience [sjtate [p] arks’ amenities and programs without being exposed to secondhand tobacco smoke and tobacco litter” (NY Reg, Dec. 5, 2012 at 11). Following its adoption, petitioner, an organization dedicated to advancing and promoting the interests and rights of smokers, commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment seeking declaratory and injunctive relief. Petitioner alleged that 9 NYCRR 386.1 violated the constitutional principle of separation of powers because respondents lacked authority to regulate smoking in the absence of an enactment by the Legislature on that issue, and that the regulation was arbitrary and capricious due to its inconsistent treatment of parks located in New York City. Finding that 9 NYCRR 386.1 was an unconstitutional exercise of authority by OPRHP, Supreme Court partially granted the petition, prompting this appeal by respondents.[2]
“The cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation” (Matter of Nicholas v Kahn, 47 NY2d 24, 31 [1979]; *108 accord Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 865 [2003]; see NY Const, art III, § 1). As the Court of Appeals has recently reaffirmed, when determining whether an administrative agency has violated the constitutional principle of separation of powers, we must consider the “coalescing circumstances” set forth in Boreali v Axelrod (71 NY2d 1, 11 [1987]), namely, (1) whether the respondents improperly engaged in the balancing of their stated goal with competing social concerns and acted “solely on [their] own ideas of sound public policy”; (2) whether the respondents engaged in the “interstitial” rulemaking typical of administrative agencies or instead “wrote on a clean slate, creating [their] own comprehensive set of rules without benefit of legislative guidance”; (3) whether the challenged regulation concerns “an area in which the Legislature ha[s] repeatedly tried — and failed — to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions”; and (4) whether the respondents overstepped their bounds because the development of the regulation did not require the exercise of expertise or technical competence by the administrative agency {id. at 12-14 [internal quotation marks and citations omitted]; see Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d 681, 692-693 [2014]; Matter of Citizens For An Orderly Energy Policy v Cuomo, 159 AD2d 141, 152-157 [1990], affd 78 NY2d 398 [1991]). In determining whether “the difficult-to-define line between administrative rule-making and legislative policy-making has been transgressed,” this Court should view these circumstances “in combination” (Boreali v Axelrod, 71 NY2d at 11), while ever mindful that “ ‘it is the province of the people’s elected representatives, rather than appointed administrators, to resolve difficult social problems by making choices among competing ends’ ” (Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d at 697, quoting Boreali v Axelrod, 71 NY2d at 13).
Applying the four Boreali considerations, we find no usurpation of the Legislature’s prerogative by respondents’ promulgation of 9 NYCRR 386.1. First, we find no indication that OPRHP improperly balanced economic and social concerns against its stated goal in order to act on its own ideas of sound *109 public policy.[3] We specifically reject petitioner’s assertion that, because the regulatory impact statement discussed the proposed operational savings that would result from the regulation, respondents gave improper consideration to economic concerns, as this is not the kind of improper balancing proscribed under Boreali (see Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d at 697-698). Given the nature of OPRHP’s facilities, designating the more populated areas as nonsmoking, while still permitting smoking in other areas of the facilities, allows all patrons to enjoy the parks regardless of their smoking preference. As for the New York City parks, the near-complete ban on smoking there even more strongly supports respondents’ goal, by recognizing that these smaller parks are more thoroughly populated and, therefore, leave little space for patrons to avoid tobacco smoke and litter. Meanwhile, these same characteristics allow smokers to easily exit the parks in order to access an area where smoking is permitted.
Thus, the regulation at issue does not represent “a regulatory scheme laden with exceptions based solely upon economic and social concerns” (Boreali v Axelrod, 71 NY2d at 11-12), nor does it contain “indicators of political compromise” (Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d at 697). Rather, all aspects of the regulation are grounded in OPRHP’s stated purpose — to allow all patrons to enjoy the fresh air and natural beauty of its outdoor facilities— and are consistent with OPRHP’s “legislatively expressed goals” (Boreali v Axelrod, 71 NY2d at 12) to operate and maintain the parks and to provide for the health, safety and welfare of their patrons. Moreover, the choices made by OPRHP here were “not very difficult or complex” as “there is minimal interference with the personal autonomy of those whose health is being protected, and [the] value judgments concerning the underlying ends are widely shared” (Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d at 699). Furthermore, the record does not indicate that the designation of no smoking areas continues to be the subject of great public debate, as it was when the Court of Appeals struck down a *110 smoking regulation by the Public Health Council in Boreali over a quarter century ago. In fact, 91% of the comments that respondents received on this rule were favorable and many commenters expressed their desire that smoking be banned outright in all state parks.[4]
Next, we do not find that OPRHP “wrote on a clean slate, creating its own comprehensive set of rules” (Boreali v Axelrod, 71 NY2d at 13). The Legislature has instructed OPRHP to “[o]perate and maintain” its sites while “[p]rovid[ing] for the health, safety and welfare of the public using [those sites]” (PRHPL 3.09 [2], [5]). Additionally, the Legislature has taken action — subsequent to Boreali — expressing its determination that tobacco smoke, including secondhand smoke, is hazardous to one’s health (see L 1989, ch 244, § 1; see generally Public Health Law art 13-E). While most of the Legislature’s action thus far has focused on prohibiting smoking indoors, it has also prohibited smoking at playgrounds, subject to certain conditions, and has further instructed that “[s]moking may not be permitted where prohibited by any other law, rule, or regulation of any state agency or any political subdivision of the state” (Public Health Law § 1399-r [3]). While there may not exist a specific statutory delegation of authority directing respondents to establish no smoking areas, “[t]he Legislature is not required in its enactments to supply agencies with rigid marching orders” (Matter of Citizens For An Orderly Energy Policy v Cuomo, 78 NY2d 398, 410 [1991]; accord Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d at 700). Moreover, OPRHP has regulated the activity of patrons at its parks and facilities pursuant to its statutory authority for decades without interference from the Legislature (compare Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d at 866).[5]
Nor do we find that OPRHP has improperly intruded upon an area that is a matter of legislative debate. Over the years, *111 while several bills concerning prohibitions against smoking in outdoor areas have been introduced in both the Senate and the Assembly, most died in committee. We are not persuaded that these failed bills are enough to warrant the conclusion that OPRHP has exceeded its authority (see Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d 156, 170 [1993], cert denied 512 US 1213 [1994] ).[6] Most notably, the Legislature’s Administrative Regulations Review Commission, which is tasked with overseeing the rule-making process and examining proposed rules for, among other things, “statutory authority [and] compliance with legislative intent” (Legislative Law § 87 [1]), reviewed 9 NYCRR 386.1 and “urge[d] [its] adoption.”
Finally, we find that there was sufficient agency expertise required to enact this rule such that it did not intrude upon legislative authority. OPRHP’s expertise lies in acquiring, operating and maintaining state parks and historic sites (see PRHPL 3.09). OPRHP observed that, “[i]n addition to potential health risks, exposure to tobacco smoke negatively impacts the experience of park visitors, as does litter from discarded cigarette and cigar butts,” and that such visitors would “prefer not to have their park experience degraded by unhealthy and irritating exposure to second hand tobacco smoke and litter” (NY Reg, Dec. 5, 2012 at 11). In developing the challenged regulation, OPRHP considered the nature of the properties under its jurisdiction in order to determine how best to locate the no smoking areas; this is evidenced by the rule’s treatment of parks in New York City, which differ in size and setting from the parks elsewhere in the state. Accordingly, upon applying the Boreali considerations, we conclude that OPRHP has acted within its competence and authority by regulating the smoking activity of patrons at its parks and facilities.
We next consider petitioner’s assertion that 9 NYCRR 386.1 is arbitrary and capricious because it treats state parks located in New York City differently from those throughout the rest of the state. “It is well-settled that a [s]tate regulation should be upheld if it has a rational basis and is not unreasonable, arbitrary, capricious or contrary to the statute under which it was promulgated” (Kuppersmith v Dowling, 93 NY2d 90, 96 [1999] [citations omitted]; see Matter of Ford v New York State Racing & Wagering Bd., 107 AD3d 1071, 1073 [2013], *112 affd 24 NY3d 488 [2014]). Pursuant to 9 NYCRR 386.1, smoking is prohibited throughout the parks located in New York City, except that the Commissioner may allow smoking in limited areas, whereas, in parks throughout the rest of the state, smoking is permitted except in designated nonsmoking areas. According to respondents, this greater restriction in New York City parks is due to their smaller size, which permits patrons to easily walk to an area outside of a park to smoke. Additionally, since smoking is already prohibited in New York City’s public parks, respondents determined that the nearby state parks should be managed in a consistent manner. Inasmuch as the different treatment of parks located in New York City is not unreasonable, arbitrary or capricious, we decline to annul the regulation on that basis (see Matter of Ford v New York State Racing & Wagering Bd., 107 AD3d at 1074-1075; Matter of Sullivan Fin. Group, Inc. v Wrynn, 94 AD3d 90, 98 [2012]).
Lahtinen, Garry, Rose and Lynch, JJ., concur.
Ordered that the order and judgment is modified, on the law, without costs, by reversing so much thereof as partially granted petitioner’s application; petition dismissed in its entirety and it is declared that 9 NYCRR 386.1 has not been shown to be unconstitutional; and, as so modified, affirmed.

. As relevant here, 9 NYCRR 386.1 provides that
“(a) Smoking of tobacco or any other product is prohibited in the following outdoor locations under the jurisdiction of the office: (1) any No Smoking Area designated by the [C]ommissioner. Examples of areas that may be designated as No Smoking Areas include: playgrounds, swimming pool decks, beaches, sport or athletic fields and courts, recreational facilities, picnic shelters, fishing piers, marinas, historic sites, group camps, park preserves, gardens, concessions, educational programming, or other areas where visitors congregate, including within fifty feet of entrances to buildings; and (2) each state park in New York City, with the exception that the [C]ommissioner may allow smoking in limited areas within each park.”

. While Supreme Court granted petitioner much of the relief it requested, the court did not address whether the regulation was arbitrary and capricious. Additionally, it declined to issue an order precluding respondents from enforcing any similar rules in the future.

. Supreme Court did not address the first Boreali factor, as petitioner apparently asserted that such factor was not relevant to this proceeding.

. We note that several other agencies have also adopted rules that regulate smoking in areas under their jurisdiction (see e.g. 9 NYCRR 300-3.1 [nj; 4064.5; 14 NYCRR 633.23; 18 NYCRR 414.11).

. Among the activities prohibited or regulated by OPRHP at the sites under its jurisdiction are: polluting, littering, destroying property, hitchhiking, gambling, possessing animals, nudity, using all-terrain vehicles, firearms and weapons, and artificial swimming aids, games and athletic activity, model boating, riding saddle horses, roller skating, kite flying, swimming, boating, golfing, bicycling and taxis (see 9 NYCRR 375.1, 377.1).

. We note that many of these bills contained much greater restrictions than the regulation at issue here, including complete bans of smoking in all public parks, not just those under the jurisdiction of OPRHP.